# The People's Insurance Company *versus* Spencer and McKay.

1. Debt will lie on a policy of insurance renewed by a parol endorsement.

2. In an action for loss by fire of a brewery and its contents where the plaintiffs carried on distilling, evidence that they had taken no license from the government; that they had insured in other companies as brewers without disclosing that they were distillers, and that they had made false representations to other companies, and of the classification of risks and rates in other companies, was irrelevant.

3. Where the insurance was "on barley and malt in assured's malt-house and brewery," and a condition was that the risk could not be increased without notice to the company and endorsement on the policy, the fact that the assured carried on distilling in the building would be fatal to the claim of the assured for loss, unless the company had notice of the distilling before the insurance.

4. Notice to the agent of an insurance company is notice to the company.

5. If the insurance was effected with full knowledge by the agent of the company that distilling was to be carried on, the condition as to endorsement

of notice had no application, and the company could not allege an increase of risk.

6. Where a policy is for a year and is renewed and then is substituted by a new policy, and the assumption of an additional risk by endorsement on such policy,—notice of an increased risk given before the renewal of the original policy runs through all subsequent insurances.

7. At the time of the fire the assured had thirty or forty barrels of whiskey in the cellar of his brewery. The court charged that "a necessary and natural incident of this business (distilling) would be to have some of the manufactured article on hand." *Held*, that, in the absence of evidence to the contrary, this was not error.

ERROR to the Court of Common Pleas of *Allegheny county.*

Joshua Spencer and James McKay brought an action of debt to March Term 1866, against The People's Insurance Company, to recover for a loss by fire of their stock of barley, malt and hops contained in the Phœnix Steam Brewery.

The plaintiffs declared, that on the 2d of December 1864, they were the owners of a stock of barley, malt and hops in the Phœnix Steam Brewery, and that the defendants then made an insurance on said stock for $5000, against loss by fire, for one year from the 29th of November 1864, and on the 5th of December 1864, by endorsement on the policy, insured $5000 more; and averred that the stock was destroyed by fire on the 5th of June 1865. On the trial, March 8th 1866, on objection that the policy was not admissible in an action of debt, the plaintiffs, by leave of the court, filed another count, alleging, that on the 2d of December 1864, they were owners of a " stock of barley, malt and hops" in the Phœnix Steam Brewery, and the defendants made a policy of insurance " on the plaintiffs' said barley and malt to the amount of $5000," for one year from November 29th 1864; that on the 5th of December 1864, by endorsement on the policy, they insured the plaintiffs " on said barley and malt" the further sum of $5000; and that on the 10th of December 1864, the defendants, by writing across the face of the policy, agreed that the insurance " should also attach and cover on hops ;" and averring the loss by fire on the 5th of June 1863.

The plaintiffs then offered in evidence a policy issued to them by defendants, dated December 2d 1864, for $5000, with endorsement of increase of $5000, and writing across the face as set out in the *narr. :* to the admission of this policy the defendants made the same objection as before the amendment, but it was admitted by the court and an exception taken. The plaintiffs having proved the loss of their stock by fire and its value, rested..

The defendants then offered to prove, that at and before the fire the plaintiffs had no license from the government as distillers of spirituous liquors, for the purpose of showing that they were then acting in violation of law ; also, that all insurance companies in the city have classifications of risks, and the rates of insurance

vary in articles in the same class; also, that they had effected insurance in other companies without disclosing their business as distillers, and made false representations to other companies: all which offers were objected to by plaintiffs and rejected, and exception taken.

The defendants gave evidence by their secretary, W. F. Gardner, that in December 1862 he went to the brewery to examine with reference to insurance; was shown through the whole building, and neither saw nor was told anything that would lead him to suppose that any business but brewing was carried on; and that he took the insurance for a year solely on his inspection of the premises: the policy was renewed November 29th 1864 for a year more, " without information or intimation of a change." When the second policy was nearly out, November 29th 1864, McKay asked for an additional insurance of $5000, which was taken, and the policy sued on issued—the secretary having no knowledge of the distilling. The policy of December 1862 was renewed December 1863: he " endorsed the renewal on the policy dated November 29th 1864—at this time, December 1864, he had no knowledge of distilling being carried on." He testified also, that it was not likely he would have taken the risks if he had known of the distilling, or, if he had, it would have been at double the rates. There was other evidence that a distillery would increase the risk.

The defendants gave evidence that in November 1863, Gardner was at the brewery; was shown the distilling apparatus, and told that plaintiffs were going to distil. It appeared also by the evidence, that there were two barrels of whiskey near the still, and thirty or forty barrels in the cellar at the time of the fire.

The defendants submitted a number of points, the 3d, 4th, 5th, 8th, 9th and 10th of which, together with their answers, are as follows, viz.:—

3d point. The policy sued on * * declares, that ' if the risk shall be increased by any means whatever within the control of the assured, during the continuance of the insurance, and notice thereof be not given to the company, and such increased risk be allowed, *and endorsed thereon*,' then the ' policy should be of no force,' and it appears by the policy offered in evidence, that no such allowance of increased risk was or is endorsed thereon. If the jury believe from the evidence that the plaintiffs, during the continuance of the policy, carried on in their brewery the additional business of distilling spirituous liquors or whiskey, and stored a large quantity of whiskey on said premises, and that by means of said distillation and storage of whiskey in said brewery, the risk and peril of the property insured by defendants for the plaintiffs therein was increased, then the contract of insurance

[People's Insurance Co. *v.* Spencer.]

has been broken and violated by the plaintiffs, and they cannot recover.

Answer: "This point is affirmed, if the jury find that before or at the time the policy in suit was issued, the company did not know that the brewery buildings were used for distilling and storing whiskey. But if the company, at or before the date of the policy in suit, knew that the brewery was used for these purposes, in connection with brewing and malting, the law would be otherwise, as explained more fully in the general charge."

4th point. The policy or policies sued on are, under the evidence in this case, to be considered and treated as a renewal and increase of previous existing policies issued by said defendants to said plaintiffs.

Answer: "This point is affirmed; but it must not be understood that the policies issued in 1862 and 1863 are to be taken as parts or parcels of the contract upon which the plaintiffs seek to recover. If the plaintiffs have a right to recover at all, it is upon the policy issued in December 1864, and the enlargement thereof by the endorsement on the policy, but the original insurance in December 1862, and the renewal in December 1863, and what occurred in connection therewith, may shed some light as to the knowledge possessed by the parties, at the time the policy in suit was issued, and the understanding they each had of the circumstances connected with the risk. The testimony shows that the policy in December 1862 was issued after a survey and inspection of the premises by Mr. Gardner, the agent of the company, and appears to have been based entirely upon the personal knowledge thus acquired by him. The defendants claim that it was renewed in December 1863, upon the assumption that the building was used in the same manner and for the same purposes as when first insurance was taken; and that the policy in suit was issued and enlarged under the same circumstances, neither the company nor its secretary knowing anything about the introduction of distilling until after the fire."

5th point. The proviso against increase of risk by acts of the insured, contained in the 10th condition annexed to the policy, is not to be controlled or limited by the other conditions and specifications of hazard annexed to said policy, but is an *independent condition of itself*, and therefore if the jury believe that the introduction by the plaintiffs into their brewery of the business of distilling whiskey, increased the risk and peril of the property insured for the plaintiffs by the defendants, then such increase of risk makes the policy void, and bars the plaintiffs' right to recover upon it, without regard to the specification of risk annexed to said policy.

Answer: "This point is affirmed, if you find that the insurance company did not know that the brewery building was to be

used in part for distilling spirituous liquors until after the policy in suit was issued; but if you find that the company did know that fact, and issued the policy afterward with a full knowledge of the distilling, &c., the law would be otherwise, and the plaintiffs may recover."

8th point. The property insured by this policy, viz., '*barley, malt and hops*,' being such as is used for brewing alone, and the building in which said property is said, in said policy, to be situated, being therein described as a '*Malt-House and Brewery*' only, the use by the plaintiffs of said building in any manner otherwise than as a '*Malt-House and Brewery*,' was *per se* a violation of the contract of insurance, and bars the plaintiffs' right to recover.

Answer: "This point is affirmed, unless you find that the company knew that the building was to be used for distilling, and assumed the risk with this knowledge and understanding; if so, the plaintiffs may recover."

9th point. Inasmuch as the policy prescribes and requires a particular mode by which increase of risk is to be allowed, viz., *by endorsement thereof on the policy*, such allowance of increased risk can be proved only in that way; and inasmuch as no such endorsements are found on said policy, the allowance of such increased risk, even if made by defendants' agent in some other and unauthorized way, is to be treated as invalid and not binding on the defendants; and the jury should dismiss from their consideration all the parol evidence offered by plaintiffs on that point, and render their verdict as though no such allowance or permission had been granted.

Answer: "This point is refused. There is no evidence that the plaintiffs ever applied to the company for the allowance of increased risk. The point is not applicable to the evidence in the cause."

10th point. That if the jury believe from the evidence that the plaintiffs had, at the time of the fire, a large number of barrels of whiskey stored on said premises, and the fact of such whiskey so stored increased the risk and added to the violence of the fire, and increased the difficulty of extinguishing it, such conduct of the plaintiffs was a violation of the contract of insurance, and they cannot recover.

Answer: "This point is affirmed, with the explanation and qualification given in answer to the 5th point. If the defendants issued the policy knowing that distilling whiskey was part of the business carried on in the brewery, a natural and necessary incident of this business would be to have some of the manufactured article—whiskey—on hand, and the company under such circumstances could not avoid liability on the ground assumed in this

point, viz., the storage of whiskey in barrels in the brewery building."

The court (Sterrett, P. J.), after recapitulating the evidence, further charged :—

" If, after effecting the insurance on the stock in the brewery, then used as a brewery and malt-house, the plaintiffs, without the knowledge or consent of the insurance company, introduced a still, and commenced the manufacture of whiskey in connection with the brewing, and the jury is satisfied that by so doing the risk was increased, the plaintiffs cannot recover ; nor can they recover if by any other means whatever, within their control, the risk was increased without the knowledge or consent of the company.

" But the evidence, if believed by the jury, shows that the still was introduced into the brewery before the policy of December 1863 was issued ; that in point of fact the risk was not increased during the period covered either by the policy of 1863 or 1864.  If the company was not otherwise informed that distilling had been introduced in connection with brewing, what was the duty of the plaintiffs when they went first to insure after the change of business ? manifestly, it was their duty to make it known to the insurance company.  The secretary himself examined the building in 1862, and would of course presume, when applied to for a renewal of insurance, that the building continued to be used as a brewery and malt-house as when he inspected it.

" If the risk was increased by the introduction of distilling, it was clearly the duty of the plaintiffs to inform the company of the change, and if they failed to do so, whether intentionally or not, it was a concealment which would avoid the policy.  The law on this subject is well settled, not only the law as arising out of the special provisions of the policy in suit, but the general law of insurance.

" There must be the most perfect fairness in obtaining a policy of fire insurance, in disclosing all circumstances material to the risk, even the reasonable grounds of apprehension on the part of the insured must be stated.  Good faith forbids either party, by concealing what he privately knows, to draw the other into a bargain from his ignorance of that fact, and his believing the contrary ; concealment is regarded as a species of fraud, a suppression of truth.  The reason of the rule against concealment is to prevent fraud and encourage good faith.  In every kind of insurance it is held to be one of the plainest principles of equity, that a contract which one party has been induced to enter upon, from his ignorance of the thing concealed, shall not be enforced against him by the other who has concealed it.  The contrary would lead to frequent and fraudulent suppression of information.  All the authorities concur in the position, that if the concealment is mate

[People's Insurance Co. v. Spencer.]

rial it will avoid the policy, notwithstanding the party insured did not intend to commit any fraud. The suppression of the truth may happen by mistake, and be entirely without fraudulent intention; still the underwriter is deceived, and the policy is void, for the reason that the risk run is really different from the risk understood, and intended to be run, at the time of the agreement.

" A concealment which is only the effect of accident, inadvertence or mistake, is equally fatal to the contract as if designed. By a material fact is meant one, which, if communicated to the insurer, would induce him either to decline the insurance altogether, or take it, if at all, at a higher premium.

" Whether the matter or fact concealed is *material* or not in any particular case, is for the consideration of the jury."

The jury found for the plaintiffs $10,300.

The errors assigned were the rulings of the court as to the evidence, the answers to the defendant's points given above and the charge.

*R. & S. Woods* and *J. J. Kuhn*, for plaintiffs in error, cited Lawall *v.* Rader, 12 Harris 283; Lehigh C. and N. Co. *v.* Harlan, 3 Casey 430; Desilver *v.* State Mut. Ins. Co., 2 Wright 130; Fire Association *v.* Williamson, 2 Casey 196; Trask *v.* State F. and M. Ins. Co., 5 Id. 198; Inland Ins. Co. *v.* Stauffer, 9 Id. 397; Sykes *v.* Perry County Mut. Ins. Co., 10 Id. 79.

*T. B. Hamilton & Co.* and *Hamilton & Acheson*, for defendants in error, cited 1 Chitty's Pl. 108, 110; Angell on F. and L. Ins. §§ 324, 355; Cumb. Valley Ins. Co. *v.* Schell, 5 Casey 31; U. S. *v.* Colt, 1 P. C. C. R. 149; Franklin Ins. Co. *v.* Massey, 9 Casey 221; Howard Ins. Co. *v.* Bruner, 11 Harris 50; Girard Ins. Co. *v.* Stephenson, 1 Wright 298.

The opinion of the court was delivered, January 14th 1867, by
WOODWARD, C. J.—In the dozen assignments of errors upon this record there are several that shall be despatched with a very few words. It cannot be doubted that debt will lie upon a policy of insurance renewed by a parol endorsement: Franklin Ins. Co. *v.* Massey, 9 Casey 221. Nor that the amended *narr.* embraced the " hops" that were added to the policy. And as to the allegations that plaintiffs had taken no license from the Government for distilling whiskey, and that they effected insurance in other companies as brewers and maltsters without disclosing their operations as distillers, or that they had made false representations on the subject to Mr. McFadden as agent of other companies, the evidence was properly rejected, for manifestly these topics of inquiry were irrelevant to the present issue. So was the propo-

sition to prove the classification of risks and rates of insurance in other companies. In a word, the bills of exception to evidence present no ground for reversing the judgment.

And the errors assigned upon the charge all resolve themselves into two questions: first, whether the company had notice of the intended distilling operations before the policy in suit was issued; and, second, whether the whiskey on hand at the time of the fire was a violation of any of the covenants of the assured.

The first was a question of fact. If it had not been found for the plaintiffs, it would have been fatal to their action, because under the conditions of the policy they could not increase the risk after the policy issued without notice to the company and an endorsement thereof on the policy. There was no such endorsement, and the only way to excuse the want of it was to prove that distilling had been added to the business of brewing before the policy issued, and consequently that it was one of the risks intended to be insured.

The evidence upon this point was conflicting, Gardner, the agent, denying that he knew that plaintiffs intended to add the business of distilling whiskey to their appropriate business, but several other witnesses proved him there inspecting the premises in November 1863, when all the arrangements for distilling were pointed out and explained to him. One of these witnesses, Robert Watson, speaking of Gardner's visit in November 1863, says, "he came there to see around; I showed him around. He inspected the building; showed him the mash-tubs; showed him where we were going to move the boiler. I had then ordered a new boiler, and showed him where we were going to set it. The still was there, it had been put up the month before. I showed him the old mash-tub and the new one, and where we mashed the grains and took the extract out of them for making whiskey. I think it was some three or four weeks before the policy of December 5th 1863 was taken out." On his cross-examination, this witness said he did not tell Gardner we were then distilling whiskey, but I told him that we were going to do it, and showed him the machinery we were putting up.

Other witnesses testified to the same effect, so that the court had the right to submit the question of notice and the jury to find it as they did. And notice to the agent was notice to the company, but was it prior to the policy in suit?

On this point there is a little intricacy in the dates of the several policies. The first policy on the "Phœnix Brewery" issued December 5th 1862 for $5000, at one year. By endorsement on the policy made in December 1863, this risk was renewed for a year, to expire December 5th 1864. On the 2d December 1864, the plaintiffs took another policy for $5000 on "barley and malt contained in assured's malt-house and brewery, known as

Phœnix Brewery," to expire on 29th November 1865. On the 5th December 1864, an endorsement was made upon the last-named policy, by which an additional risk of $5000, upon the same barley and malt, was taken in consideration of an additional premium paid. It would seem that this was a continuation of, or rather a substitution for, the policy of 1862 and the renewal of 1863. It is upon this policy of 2d and 5th December 1864 for $10,000, that the suit is brought.

Now if this policy, or the renewal of the policy of 1862 made in December 1863, were granted with the full knowledge of the agent of the company that distilling whiskey was to be carried on in the brewery, the conditions about endorsement of notices have no application, and the company have no ground to allege an increase of risk: Girard Fire Ins. Co. v. Stephenson, 1 Wright 298.

The condition or covenant is, that without notice endorsed upon the policy the risk shall not be increased " *during·the continuance of the insurance.*" But where a policy is for a year, and then is renewed, and then is substituted by a new policy, and the assumption of an additional risk by endorsement on such new policy, notice of an increased risk given before the renewal of the original policy, runs through all the subsequent insurances. The company must be held, therefore, to have assumed these subsequent risks upon the barley and malt with their eyes wide open to the fact that distilling whiskey, as well as brewing ale, was carried on in the Phœnix Brewery.

2d. It appeared in evidence that there were two barrels of whiskey near the still, and a considerable quantity, perhaps thirty barrels, stored in the cellar at the time of the fire, which the court treated as a natural and necessary incident to the business of distilling. Although the fire did not originate from this whiskey, nor from the distillery business in any of its parts, this answer of the court is assigned for error on the ground that there was no proof of a custom among distillers to retain in their distillery so large a quantity of the manufactured article. We believe that distillers do not always have warehouses for storing their liquors in, and where the business is only incidental to that of brewing, such a warehouse could hardly be expected. Nor do we know that thirty or forty barrels of whiskey are an unusual quantity for a distiller to have on hand in his distillery. The court said it was a natural incident of the business, and we are bound to believe it until the contrary is shown. Had there been any evidence of the custom of distillers, it would have raised a question for the jury; but without such evidence, there was nothing to submit to the jury on this head, and *non constat* that the court erred in what they said.

The judgment is affirmed.