## I. C. Caldwell, Adm'r of the Estate of David Caldwell, deceased, *v.* Fire Association of Philadelphia.

*Insurance—Fire insurance—Statements in application.*

Where, at the time of issuing an insurance policy, the company knows or ought to know that one of the conditions thereof is inconsistent with the facts, and where the insured has been guilty of no fraud, the company is estopped from setting up the breach of said condition.

In an action upon a fire insurance policy, it appeared that the insured acquired title to the property insured by a sheriff's deed. About a month after the date of the deed, he signed a paper declaring that four other persons had contributed to the purchase money of the property at the sheriff's sale, and agreeing that he would hold the title for the joint use of himself and the persons who had contributed, and that, when the property was sold or disposed of by him, he would contribute and pay to the contributors each his pro rata share of the proceeds. Seven years afterwards he applied to the defendant's agent for insurance and the agent asked the insured "who the title was in," to which the insured replied "the title is in me, I have the deed." The defendant subsequently accepted two annual premiums, and the insurance was renewed without any further information or inquiry. The company, through its agent, previously knew

that more than one person was interested in the property or the proceeds thereof. *Held,* (1) that if a mistake had been made it was chargeable, not to the insured, but to the company's agent, and it should be imputed to the company itself; (2) that a judgment on a verdict for plaintiff should be sustained.

Argued April 23, 1896. Appeal, No. 173, Jan. T., 1896, by defendant, from judgment of C. P. Huntingdon Co., May T., 1894, No. 11, for plaintiff on trial by court without a jury. Before STERRETT, C. J., McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Assumpsit on a policy of fire insurance.

The case was tried by the court without a jury under the provision of the act of April 22, 1874. LOVE, P. J., of the 49th judicial district, specially presiding, filed the following opinion:

### FINDINGS OF FACT.

1. D. Caldwell, the decedent, in his lifetime bought the property upon which the insurance was placed, at sheriff's sale, December 17, 1884. D. Caldwell, George A. Port, D. Blair, Frank Hefright and James R. Carmon were at the time of the sale creditors of George B. Wharton. The said creditors agreed among themselves that said D. Caldwell should bid in the property and take the legal title in trust for himself and other creditors above named. Subsequently some of the parties transferred their respective interests to others so that when the insurance was effected, which is the subject of this controversy, George A. Port's interest in the premises was thirty-three sixty-ninths of the whole, J. R. Carmon's interest, fourteen sixty-ninths of the whole, and D. Caldwell's interest twenty sixty-ninths of the whole.

2. D. Caldwell held at the time the policy was placed the legal title in trust for the joint use of himself and George A. Port and J. R. Carmon, in proportion to their respective interests to make sale or dispose of the same and account and pay to each their pro rata share of the net proceeds.

3. The first policy placed in this defendant company was dated January 5, 1891, for one year, and renewed from year to year, and was issued in the name of David Caldwell alone, who held the legal title. At the same time policies were taken out

in other companies upon the same property, all through the same agent representing all of them.

4. From the time of the purchase by David Caldwell, he took charge of the property, looked after it, leased it, paid taxes and insurance thereon up until the time of his decease.

5. The creditors in purchasing the property did so for the purpose of saving their claims against George B. Wharton, and with a view to have Mr. Caldwell resell the property, and not with a view of operating it.

6. David Caldwell died April 7, 1893, and letters of administration were duly issued to I. C. Caldwell upon his estate by the register of Huntingdon county.

7. The property was a boot and shoe manufactory, situated on the west side of Penn street, between Fifteenth and Sixteenth streets, in Huntingdon, and was destroyed by fire on the night of April 11, 1893.

8. Proofs of loss were duly made out by I. C. Caldwell, administrator of D. Caldwell, setting forth that the property insured belonged exclusively to D. Caldwell's estate, and that no other person or persons had any interest therein. The said administrator had no knowledge at the time of the interest of George A. Port and J. R. Carmon in the property, there being nothing in the deed showing any trust, and no declaration of trust recorded, but on learning of their respective interests, concedes that they are entitled to their pro rata share of the insurance, and this suit is maintained for their benefit, as well as of the estate of D. Caldwell.

9. The insurance was placed by W. H. D'Armitt, as agent of the defendant company, as well as that of the American Insurance Company, and the Queen Insurance Company. He testified that when he first placed the policies in January, 1891, that he asked D. Caldwell who the title was in, and that he replied, " the title is in me." On cross-examination, he said he asked the question because he had information of mixed ownership. He also testified that he wrote the policy in the name of D. Caldwell, individually, because he said " the title is in me, I hold the deed," and that in subsequent renewals of the policy nothing was said as to the title at all. The statements of Mr. D'Armitt are not modified or contradicted, and could not be, as they were made by the decedent, whose mouth is since closed by death.

10. The policy in suit was issued by defendant company January 5, 1893, for one year in the sum to two thousand (2,000) dollars, of which sum $920 was on the building, $280 on the engine and connections, and $800 on fixed and movable machinery.

The total loss suffered as fixed by appraisers was as follows:

| | |
|---|---:|
| Building . . . . . . | $1,957 86 |
| Machinery, etc. . . . . . . | 1,346 50 |
| Total . . . . . . | $3,304 36 |

The pro rata share claimed under the policy in suit is as follows: On the building is $783.61, and on the machinery, etc., $538.60, making $1,321.76, with interest from August 10, 1893.

11. The policy contains the following clause: " This entire policy unless otherwise provided by agreement, indorsed hereon, or added hereto, shall be void if the interest of the insured be not truly stated herein . . . . or if the interest of the insured be otherwise than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple." The defendant denies liability solely upon the ground of the alleged breach of the above stated provision of the policy by the insured.

### CONCLUSIONS OF LAW.

We are asked to hold as a matter of law upon the foregoing facts that there had been such a violation or breach of the provisions of the policy as set forth in the eleventh paragraph of our findings of fact that the plaintiff cannot recover.

The question then is: Do the facts as above set forth constitute such a violation of the provisions of the policy as to work a forfeiture thereof and defeat the plaintiff's right to recover thereon? It is conceded that D. Caldwell at the time the policy was issued, and at the time of the fire, had an insurable interest in the property insured. At the time the policy was issued, D. Caldwell, so far as the legal title showed of record, was the absolute owner thereof. The deed to him contained no condition of trust, nor was there any declaration of trust in relation thereto upon record. So that the trust under which the legal title was held was a secret trust so far as the public was concerned. The declaration of trust executed by D. Caldwell,

George A. Port and Joseph R. Carmon, January 7, 1885, defines the nature of the trust, as follows : " The said Caldwell agrees to hold the title to the said property, purchased as aforesaid, for the joint use of himself and such of us as have contributed to the payment of the purchase-money aforesaid and when said property aforesaid is sold or disposed of by him he will distribute and pay to each contributor, as aforesaid, his *pro rata* share of the net proceeds thereof." The condition of the trust, as above stated, left the property in the hands of the trustee, with power to sell and dispose of the same and account for the proceeds to his cestuis que trust. It then can hardly be said that a tenancy in common existed under its terms. It is not necessary to cite the very numerous decisions of our own courts and those of other states construing what amounts to " unconditional and sole ownership " as contained in the policy. It has been held that a vendee under articles having paid part of the purchase money, the vendor still holding the legal title, is such owner, and that such ownership by the insured is not a violation of such a clause in the policy. It has also been ruled that if the insured after taking out a policy with a clause such as contained in this policy, sell the property insured, under an executory contract, and retain the legal title until purchase money be paid, and loss occur before purchase money be paid or deed executed, is not a violation of the condition : Walter v. Sun Fire Office, 165 Pa. 381 ; Burson v. Fire Association, 136 Pa. 267 ; Penna. Fire Insurance Company v. Dougherty, 102 Pa. 568 ; Imperial Fire Insurance Co. v. Henry Dunham, 117 Pa. 460 ; Chandler v. The Commerce Fire Insurance Company of New York, 88 Pa. 223.

We think in view of the character of the trust, which in our opinion is of such a nature as does not create a tenancy in common, that it is doubtful whether the cestui que trust could sustain proceedings in partition under its provisions, that the title and ownership of the insured does not violate the provisions of the policy. And we are inclined to think that under the express term of the trust, had D. Caldwell been negligent in not looking after and keeping the property insured and loss had occurred, he might have been called upon to make good the loss to his cestuis que trust, as he could be called upon to account to them.

There is no question that a trustee may insure in his own

name property in which he has an insurable interest for himself and the benefit of his cestui que trust, and recover upon the policy the whole insurance, and pay over the proportion to his cestuis que trust, to which he is entitled.

The insurance in this case was to cover the entire interest in the property. The premiums in full were duly paid for the insurance of the whole. When the policies were first taken out in 1891, W. H. D'Armitt testifies that he asked the insured in whom the title was, and the insured replied that, " the title is in me, I hold the deed." He did not inquire as to the character of the ownership. He further testifies that he asked the question as to whom the title was in, because he had information as to mixed ownership. He does not state what information he had or from whom he received it. He says further, that when Mr. Caldwell told him that the title was in him ; that he held the deed, that he (D'Armitt) took it for granted that Caldwell had bought the others out ; by fuller inquiry he would no doubt have learned, if he did not know, the real character of the ownership. It seems to us that according to Mr. D'Armitt's own testimony he had such information that practically amounted to knowledge of the interests of the other parties therein. The answer of Mr. Caldwell that the title was in him, that he held the deed, would seem to import that. If so, then may it not be fair to presume that the insurance was placed with such information as to ownership as was tantamount to knowledge thereof. And if so, then the company would be liable.

When the present policy in suit was written there was no question or inquiry as to the title or ownership, and no change in the nature or character thereof had been made. There is no allegation of fraud, or that untruthful answers were given as to title, or that there was any increase of risk. We are therefore of the opinion that under all the facts in the case the plaintiff is entitled to recover, and therefore direct judgment to be entered in favor of the plaintiff for the sum of fourteen hundred and sixty-seven dollars and fifteen cents ($1,467.15), being the amount of the pro rata fixed by the adjustment of loss, to wit : The sum of $1,321.76, with interest from August 10, 1893, to this date, July 9, 1895, unless exceptions be filed according to law.

Upon exception the court filed an opinion which is in part as follows :

The first exception is that we failed to find sufficiently as a fact " that J. R. Carmon, Geo. A. Port, David Blair and Frank Hefright, each contributed his proportion to the purchase money of the property claimed to be covered by the policy," etc. While in our findings of fact we did not state specifically that the said parties had contributed their respective shares of the purchase money, yet it was so treated in our disposition of the case, and we now do find as a fact that the said J. R. Carmon, Geo. A. Port, David Blair and Frank Hefright each paid his proportion of the purchase money paid for the property covered by the policy as per agreement of June 27, 1885, offered in evidence, and that D. Caldwell at the time of placing the policy which is in suit was the owner of the interest of Frank Hefright, it having been transferred to him sometime prior thereto.

We find as a fact that the title to the premises in question remained in D. Caldwell up to the time of his decease, April 6, 1893, and in his estate under the terms of the agreement of trust dated June 27, 1885, for himself or his estate, and J. R. Carmon and George A. Port, until after the fire, and that subsequent to the fire, to wit: June 30, 1893, the said premises were conveyed by the estate of David Caldwell, Geo. A. Port and wife and J. R. Carmon and wife to J. R. Kendig, the cestuis que trust thus joining in the deed. . . .

The evidence of Mr. D'Armitt the agent of the defendant company, who placed the policy in suit, shows that, when he placed the first policy in January, 1891, upon the property in question, he asked Mr. D. Caldwell, " Who is the title in ? " Mr. D. Caldwell said " The title is in me, I hold the deed." He also testifies that the reason he asked the question was that he had information of a mixed ownership.

In this case the agent of the company evidently had knowledge of the ownership of the property in question about the time of the fire, or shortly after, which occurred April 11, 1893, and on May 18, 1893, had an award of appraisers chosen by the company and the assured, adjusting the loss. It might be a question whether the company knowing the nature of the ownership of the property and going on to appraise the loss and adjust the same under the terms of the policy providing for the

appraisement thereof, and putting the assured to the expense of such appointment, could not be held to have waived the condition of sole and unconditional ownership.

Our attention has been especially called to the cases of Diffenbaugh's Appeal, 150 Pa. 270, and that of Schroedel v. Humbolt Fire Ins. Co., 158 Pa. 459. In the case of Diffenbaugh's Appeal, the husband took out a policy in his own name on his wife's property. She had the title and insurable interest. The husband had no insurable interest whatever, and it was held that the condition of the policy making it void if the interest of the insured be not truly stated therein was violated and a suit on the policy by the wife could not be maintained. In the case of Schroedel v. Ins. Co., there the title was in the name of John and Bertha Schroedel and the policy was issued in the name of John Schroedel alone. Had the title in that case been wholly in John Schroedel, and he had held one half in trust for his wife, by a declaration of trust made to her, and he had power to sell and dispose of the property and account to her for one half of the proceeds, then the case would have been similar to the one trying. We do not however think the principle described in those cases controls the one at bar.

And now, December 31, 1895, we therefore, except wherein we have stated our additional findings of fact, overrule the other exceptions and direct judgment to be entered in favor of the plaintiff for the sum of $1,467.15, in accordance with our findings July 9, 1895.

*Error assigned* was entry of judgment for plaintiff.

*Isaac S. Sharp*, of *Sharp & Alleman*, for appellant.—The rule applicable where there is no trust relation does not apply where there is such relation. The insured may be the sole and absolute owner in equity, if he does not hold in trust for any one and is entitled at any time to a conveyance ; a naked legal title in another is not sufficient to defeat recovery; Lebanon Co. v. Erb, 112 Pa. 149; Drysdale's App., 15 Pa. 457.

It is the right of the insurers to know whom they are insuring: Dieffenbaugh v. Ins. Co., 150 Pa. 270.

It is not a presumption of law that the principal knows what the agent knows unless the agent acquired the knowledge in

the exercise of his powers as agent: Hood v. Fahnestock, 8 Watts, 489; Houseman v. Building Assn., 81 Pa. 256; Bracken v. Miller, 4 W. & S. 102; Martin v. Jackson, 27 Pa. 504; Weed v. Ins. Co., 116 N. Y. 106.

Waiver is essentially a matter of intention, and cannot arise out of acts done in ignorance of material facts, and its proof is inadequate unless it is shown that the insurer knew of the right of forfeiture at the time of doing the act: Freedman v. Fire Assn., 168 Pa. 249.

We need hardly say that if the policy is void as to the real estate, it is void in toto: Fire Assn. v. Williamson, 26 Pa. 196; Gottsman v. Ins. Co., 56 Pa. 210.

*W. L. Hicks,* of *Hicks & Templeton,* for appellee.—Under the agreement between Caldwell and his cestui que trust it was his duty to protect them, and though he was not the absolute owner of the property as between himself and Port and Carmon, as to the insurance company and the public he was the owner of the property: Western & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346.

Unless particularly interrogated on the subject the insured is not required to state the circumstances which relate to the value or permanency of his interest: Richards on Insurance, sec. 136, p. 143; Peck v. New London Co. Mut. Ins. Co., 22 Conn. 575; Turner v. Burrows, 5 Wend. 541; Boutelle v. West Chester Fire Ins. Co., 51 Vt. 4; Clement's Fire Ins. Digest, 349; Pittsburg Ins. Co. v. Frazee, 107 Pa. 521; Webber v. American C. Ins. Co., 35 Mo. App. 521; Welsh v. London Assurance Corp., 151 Pa. 607; Roberts v. Firemen's Ins. Co., 165 Pa. 55.

The company is in no danger of a second action on the policy by the cestuis que trust, for they are not named in the policy and cannot sue: Miltenberger v. Beacom, 9 Pa. 198.

A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it: Phila. Tool Co. v. Assurance Co., 132 Pa. 236; Bole v. New Hampshire Fire Ins. Co., 159 Pa. 57.

The cases of Diffenbaugh v. Insurance Co., 150 Pa. 270, and Freedman v. Fire Association, 168 Pa. 249, relied upon by appellant, have no application to the present case.

In Dieffenbaugh v. Ins. Co., the party insured had no title

whatever, either legal or equitable, to the property insured. In Freedman v. Fire Association the insurance was obtained by false and fraudulent representations to the agent.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 5, 1896:

By agreement of the parties, trial by jury was waived and the decision of this case was submitted to the learned president of the common pleas, who upon the facts found by him directed judgment in favor of the plaintiff for $1,467.15. His findings of fact together with his conclusions of law are set forth in the record and need not be repeated here.

The policy in suit provides, among other things, that it " shall be void if the interest of the insured be not truly stated therein . . . . or if the interest of the insured be otherwise than unconditional and sole ownership." The learned judge was asked to hold, as matter of law, that there had been such violation of these provisions of the policy that there could be no recovery thereon. This he refused to do ; and, in view of the facts, and for reasons suggested by him in support of his judgment we are not prepared to say there is any substantial error therein. We find nothing in the record that requires a reversal.

Plaintiff's intestate, David Caldwell, acquired title to the property insured by sheriff's deed in December, 1884. In January following he signed a paper recognizing the fact that George A. Port and three others had contributed to the purchase money of the property at the sheriff's sale and agreeing that, when the property is sold or disposed of by him, he will distribute and pay to said contributors each his pro rata share of the proceeds. This declaration left the property in the hands of Caldwell, the sheriff's vendee, with full power to sell or dispose of the same, as he might deem best, and account to the parties above referred to for their respective portions of the proceeds. In that way he held the legal title to the property and controlled the same until his death in April, 1893.

In January, 1891, when he applied to Mr. D'Armitt, defendant's agent at Huntingdon where the property was located and where both the insured and the agent resided, for insurance on the buildings, said agent asked Caldwell " who the title was in," to which the latter replied : " the title is in me, I have the deed." D'Armitt further testified, in substance, that the rea-

son he asked this question was because he had information of a " mixed ownership " of the property. He did not say from whom he derived that information. If he knew, as he testified he did, that more than one person was interested in the property or the proceeds thereof, and desired to ascertain who they were, etc., he should have prosecuted his inquiry further by asking Caldwell who, if any one, other than himself, was interested in the property or the proceeds thereof ; but, he did not do so. On receiving Caldwell's answer which was directly responsive to his question, he appears to have been satisfied with the information thus communicated, viz : that the legal title to the property was in Caldwell and that he had the deed therefor; and thereupon, as he says, he wrote the policy in Caldwell's name, individually delivered it to him and received the premium. In the circumstances attending the writing and delivery of the first policy, Caldwell doubtless believed, and was warranted in assuming, that everything was satisfactory to the company. In January, 1892, and again in 1893, the annual premiums were paid by plaintiff's intestate, and the insurance was renewed in his name alone, as before, without any further information or inquiry by either party. The company, through its agent, previously knew that more than one person was interested in the property or the proceeds thereof, and nothing was ever said or done by the insured to indicate anything to the contrary. As was rightly found by the court below, the insured acted in entire good faith. Whatever mistake, or worse than mistake, was made in writing the policy in the name of the holder of the legal title alone, it is clearly chargeable, not to the insured, but to the company's agent, and should be imputed to the company itself.

Where, at the time of issuing an insurance policy, the company knows that one of the conditions thereof is inconsistent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up the breach of said condition. The same rule prevails when the insurance company ought to have known the facts constituting the alleged breach : Wood on Ins. sect. 497 ; Peoples Ins. Co. v. Spencer, 53 Pa. 353.

Judgment affirmed.