498

Jabs *v.* Lancaster County Mutual Insurance
Company, Appellant.

Argued November 19, 1930.

Before Trexler, P. J., Keller, Linn, Gaw-
throp, Cunningham, Baldrige and Whitmore, JJ.

*Horace Michener Schell*, and with him *G. H. Luckenbill*, for appellant.

*Harry E. Grim* of *Grim and Grim*, for appellee, cited: Caldwell v. Fire Assn., 177 Pa. 492; Central etc. Co. v. Ins. Co., 245 Pa. 272; Eilenberger v. Protective Mut. Fire Ins. Co., 89 Pa. 464.

OPINION BY TREXLER, P. J., February 27, 1931:

John Jabs and Louis Heintz were the owners of a certain hotel property and its contents, situated in Bucks County. On February 7, 1928, Heintz agreed to sell his right title and interest in the property to Jabs with immediate possession, he paying $500 down and the balance on May 7, 1928, when a deed was to be given.

On February 15, 1928, after the agreement had been made, Jabs obtained a policy of fire insurance from the Lancaster County Mutual Fire Insurance Company, insuring him against loss or damage by fire to the amount of $1500, covering the household furniture contained on the hotel property. On March 27, 1928, a fire occurred and loss ensued.

(1) The company denies liability on the ground that Jabs at the time the fire occurred was not the sole and unconditional owner of the property insured. Jabs testified that the agent of the company solicited insurance and asked him as to the amount desired. Jabs told him that he had an agreement in regard to the property and he had bought it from his partner. He showed the agent a copy of the contract and the agent after having been informed as to these facts, told him that it was not necessary to have the name of Heintz in the policy. The agent afterwards delivered four policies, of which the one here involved was one, to the insured. The court instructed the jury that if they believed Jabs' narrative, the company was estopped from raising the sole and unconditional

ownership clause of the contract as a defense to the suit. Jabs gave the insurance agent all the facts in regard to the transaction. He did not ask his advice in the matter, but was giving him the information required in order that a policy might issue. If the policy failed to state that Jabs was merely the equitable owner, that was the agent's fault.

The court was not without authority for ruling that the matter should be left to the jury and that if they believed the facts as narrated by Jabs, the company was estopped. In Clymer Opera Co. v. Flood City Mutual Fire Ins. Co., 238 Pa. 137; s. c. 50 Pa. Superior Ct. 639, the principle is clearly stated that "when the policy is issued without a written application and the agent authorized by the company to write the policy knows that one of its conditions is inconsistent with the facts, and the insured has been guilty of no fraud or misrepresentation, the company is estopped from setting up the breach of said condition," citing a number of cases. In that case, the insured did not own the ground, but owned the building and contents covered by the policies and thereby had an insurable interest of which he informed the agent, and the court quoting from Caldwell v. Fire Ins. Assoc., 177 Pa. 492, states: "Whatever mistake, or worse than mistake, was made in writing the policy......it is clearly chargeable, not to the insured, but to the company's agent, and should be imputed to the company itself."

In the late case of Kocher v. Kocher, 300 Pa. 206, a number of cases are cited in support of the same principle that knowledge of the local agent is tantamount to knowledge of the defendant company. The question was properly submitted by the learned trial judge.

(2) The property destroyed consisted of a large number of items, among which there was an electric piano, valued in the insured's proof of loss at $1,250 of which a claim for total destruction was made. The

plaintiff testified that he purchased the piano about five or six months before the fire at a cost of $1,250, that it was in good condition at the time the fire took place and that it was totally destroyed. The defendant produced a witness who testified that the piano could be repaired for the sum of $300. The price paid for the piano was some evidence of its value. The court instructed the jury that the fact that Jabs paid $1,250 for the piano might be some evidence of value, it was not necessarily conclusion of its value at the time when it was destroyed. There was evidence that the piano could not be repaired, Jabs testified that it would cost seven to eight hundred dollars to repair it and then it would still be an old piano and that he had afterwards spent $200 on the piano and that he would sell it for $50. The jury did not award the plaintiff the full amount of his claims, and although the testimony as to the piano might have been fuller, we think there was enough to leave the question to the jury.

The assignments of error are overruled and the judgment is affirmed.