## Headley's Express & Storage Company, Inc., v. Pennsylvania Indemnity Corporation, Appellant.

Argued April 15, 1935.   Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

*Irvin Bendiner*, with him *Sabato Morais Bendiner, Guy G. deFuria* and *Wm. J. MacCarter, Jr.*, for appellant.

*Edward D. McLaughlin*, with him *Harrold R. Gill*, for appellee.

OPINION BY MR. JUSTICE DREW, May 15, 1935:

This is an action of assumpsit upon a policy of insurance by which defendant insured plaintiff against loss and expense for "any liability imposed by law upon insured by reason of the ownership, maintenance, use or operation during the term of this policy of any automobile described in the schedule of warranties." A verdict was returned in plaintiff's favor and from the entry of judgment thereon defendant appealed, assigning certain alleged trial errors and the refusal of its motions for binding instructions and for judgment n. o. v.

Plaintiff conducts a general express and storage business, in connection with which it maintains and operates a fleet of trucks. On November 12, 1928, defendant issued its first policy to plaintiff. Negotiations toward this end began several months prior thereto, when Webster, a soliciting agent of defendant, interviewed plaintiff's secretary with a view to writing its insurance. According to the testimony in plaintiff's behalf (which, in view of the verdict for plaintiff, must be taken to be true), Webster was told that plaintiff did not own all the trucks which it operated, but that the Crosby Motor Truck Repair Company owned part of the fleet. He assured plaintiff that the ownership was immaterial. Subsequently, a list of fifteen trucks, with a short description of each, was given to Webster, who delivered it to defendant's underwriter, the scrivener of the policy. The list contained no statements with respect to ownership. Two days before the issuance of the policy plaintiff addressed a letter to

defendant authorizing the writing of the insurance on the fifteen trucks listed, which communication concluded as follows: "Crosby Motor Truck Repair Company's name is not to appear on these policies at all. We think we have made this clear, and if there is any question, please get in touch with us by phone." During the life of the policy plaintiff transferred the ownership of its trucks to the Crosby company, although continuing to operate them under lease from the latter. No notice of this transfer was given to defendant.

In 1929 Webster sought a renewal of the policy. Nothing was said by either party with regard to the ownership of the trucks. The renewal policy, dated November 12, 1929, insured plaintiff against the same type of loss and was written on the basis of the same list of trucks, with one additional vehicle. On or about November 28th, one of the trucks operated by plaintiff and described in the policy was involved in an accident, and suits were brought against plaintiff and the Crosby company. Defendant disclaimed liability and refused to defend the suits, with the result that plaintiff was compelled to do so. A nonsuit was entered in favor of the Crosby company, but verdicts totaling $13,500 and costs were recovered against the present plaintiff. Upon defendant's refusal to pay these sums plaintiff brought this action upon the renewal policy to recover the amount of the verdicts and costs obtained by the injured parties, together with the costs and expenses incurred in the defense of the suits.

There was no written application for the insurance, and plaintiff signed no statements of any kind. The policy contained a "schedule of warranties," however, in which the commercial equipment was referred to as "owned by the assured." It was further provided that the schedule was "made a part hereof, and by acceptance of this warranted by insured to be true." The policy contained a list of "declarations made by the insured," in which the trucks were listed as "owned" by plaintiff. The terms of the contract further provided that "Any

assignment of interest or other change hereunder (except by death of insured) whether voluntary or involuntary, shall render this policy void unless consented to by endorsement hereon. This policy shall be void if insured or his agent conceals or misrepresents, in writing or otherwise, any fact or circumstance in connection herewith, or makes attempt to defraud company before or after loss."

In resisting payment defendant contends that, under the provision in the policy that the statements in the schedule of warranties were, by acceptance of the policy, warranted by insured to be true, the ownership of the trucks described therein was made a warranty; that this warranty was material to the risk; that (as plaintiff admits) it was not true in fact; and that, inasmuch as defendant was not bound by the disclosures allegedly made to its soliciting agent, nor otherwise informed as to the true facts, it was not estopped to assert the variance. Plaintiff, on the other hand, argues that the policy contained no warranty of ownership, that the statements therein as to ownership were put in by defendant's underwriter without plaintiff's knowledge or authorization, and that in any case they were immaterial, since the policy protected plaintiff against liability for "maintenance, use or operation," as well as ownership. In this respect it may be noted that plaintiff was permitted, under the terms of the policy, to hire additional trucks, which would be covered by the policy. Plaintiff claims further that at all events defendant cannot set up the declarations in the policy as to ownership, because it had knowledge or notice of the Crosby company's interest when the first policy was issued.

We are convinced that, whether or not there was a material warranty of ownership in the policy, plaintiff is entitled to recover. The letter which was addressed to defendant two days before the issuance of the first policy directed that "Crosby Motor Truck Repair Company's name is not to appear on these policies at all," and in-

vited inquiry concerning any question defendant might have. This letter in itself may well be considered sufficient to put defendant upon notice of an interest of the Crosby company in the trucks and to impose upon it the duty of inquiry if it did not in fact already know of that interest. If defendant's underwriter, with notice of the Crosby company's interest, included in the policy a provision inconsistent therewith, defendant cannot avoid the policy on the ground of such provision, no fraud or misrepresentation on plaintiff's part having been shown: Dowling v. Ins. Co., 168 Pa. 234; Caldwell v. Fire Assn. of Phila., 177 Pa. 492; Clymer Opera Co. v. Ins. Co., 238 Pa. 137; Azon v. Ins. Co., 95 Pa. Superior Ct. 453; Jabs v. Ins. Co., 101 Pa. Superior Ct. 498.

Furthermore, the fact of the Crosby company's ownership was communicated to Webster, who conducted all negotiations with plaintiff, acquired the information on the basis of which the original policy was written, and delivered both that policy and the renewal policy. Plaintiff had no notice of any restrictions upon Webster's authority to receive the information on which the policy was to be based, and the jury might reasonably have inferred that Webster was held out by defendant as authorized to receive such information. Plaintiff was accordingly entitled to assume that Webster would perform his duty to the company by making full disclosure (cf. Gunster v. Scranton Illuminating, etc., Co., 181 Pa. 327, 337; Byrne v. Dennis, 303 Pa. 72, 76), and any omission to do so on his part is therefore chargeable to his principal, the company: see Kocher v. Kocher, 300 Pa. 206; Couch, Insurance, section 499. Under such circumstances the knowledge of the agent, acting in the company's behalf, is to be imputed to the company, which is barred to set up a provision in the policy inconsistent therewith: Eilenberger v. Ins. Co., 89 Pa. 464; Kister v. Ins. Co., 128 Pa. 553; Isaac v. Ins. Co., 308 Pa. 439; Carpenter v. Ins. Co., 135 N. Y. 298. In the Isaac case we were concerned with a fire policy covering the property of three persons, and

pointed out that ordinarily if the insured were not the sole and unconditional owners of the property they would not be able to recover, under the provision in the policy to this effect. It appeared that household furniture included in the policy was owned by one of the insured individually. Richey, a subagent who solicited insurance for the defendant company's general agent, was informed of the exact ownership of the furniture at the time he delivered the policy, and replied that the policy was good and covered the furniture. In holding that Richey's knowledge was chargeable to the company, which was therefore bound, we said, quoting from Carpenter v. Ins. Co., supra: "Notice to such a subagent, while engaged in soliciting insurance, of any fact material to the risk, and which affects the contract of insurance, is notice to the company, and binds the company to the same extent as though it had been given directly to the agent himself." Similarly, Webster's knowledge in the instant case of the Crosby company's ownership of some of the trucks operated by plaintiff is chargeable to and therefore binds the company, in whose behalf he solicited the insurance and delivered both policies.

Defendant relies on Northwestern Mut. Life Ins. Co. v. Roth, 118 Pa. 329, in support of its argument that it is not chargeable with Webster's knowledge. There, however, it appeared that the agent was the primary party in a fraudulent scheme executed for his own benefit, and that his failure to disclose was in furtherance of the fraud. Clearly, where the agent is acting for his own purposes in the transaction in which he acquires the knowledge, his principal is ordinarily not chargeable therewith: United Security Life Ins. Co. v. Bank of Phila., 185 Pa. 586; Dominion Trust Co. v. Hildner, 243 Pa. 253; Byrne v. Dennis, supra; Metropolitan Life Ins. Co.'s App., 310 Pa. 17. As we said in Gunster v. Scranton Illuminating, etc., Co., supra, "The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal is founded on the duty of the agent to

communicate all material information to his principal, and the presumption that he has done so. . . . But no agent who is acting in his own antagonistic interest or who is about to commit a fraud by which his principal will be affected does in fact inform the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature." No such situation is presented here. It does not appear that Webster was acting in any other than defendant's behalf when he solicited plaintiff's business and acquired the pertinent information. His negligent omission to disclose, if there was such omission, is therefore chargeable to the company.

The record is barren of any evidence tending to show deceit or misrepresentation on plaintiff's part. Rather is it apparent that plaintiff made full disclosure at the time Webster solicited the coverage for defendant. If plaintiff subsequently transferred its trucks to the Crosby company without notice to defendant, its conduct was excusable in view of defendant's previous treatment of the ownership of the trucks as immaterial. Defendant's issuance of the first policy immediately upon receipt of plaintiff's letter was indicative of its lack of concern over the question of ownership. Defendant's disregard of plaintiff's invitation of inquiry in that letter was corroborative of Webster's previous assurance that ownership was immaterial. Nor may defendant be heard to say that plaintiff's letter and the conversation with Webster were inadmissible because they preceded the issuance of the first policy and were prior to the transfer of plaintiff's trucks to the Crosby company. The knowledge gained in the issuance of the first policy is chargeable to defendant in connection with the writing of the renewal policy: People's Ins. Co. v. Spencer, 53 Pa. 353; Caldwell v. Fire Assn. of Phila., supra. By defendant's words and conduct plaintiff was led to believe that ownership was of no importance, and its reliance thereon is not to redound to the benefit of the insurer.

Defendant further contends that plaintiff is barred by its concealment of the fact that it was hiring equipment from the Crosby company. It is also urged that plaintiff falsely stated that it made no payments on account of hired automobiles. With respect to the latter contention it is sufficient to say that although obligations may have been incurred there is no evidence that plaintiff made any payments. But it is argued that plaintiff cannot recover because it represented that it did not hire any equipment from "anyone else." Any such statement must be construed in the light of the transactions between the parties in relation to the ownership of the trucks covered by the policy. It then becomes apparent that its true meaning was that plaintiff did not hire any equipment from anyone other than the Crosby company, whose ownership was a matter of knowledge on the part of the defendant. It is clear that defendant was not misled.

There remains but one final question for our consideration. Under the terms of the policy, plaintiff was entitled to recover its expenses, including fees of counsel, in connection with its defense of the suits for injuries. The same attorneys represented both plaintiff and the Crosby company, and the bill for services was rendered to both defendants in a lump sum. The trial judge properly instructed the jury that no recovery could be had in this action for services to the Crosby company. This matter was clearly presented to the jury, and it is evident that defendant's rights were not prejudiced, inasmuch as the amount returned for costs and expenses is measurably less than the amount of the statement.

A careful consideration of defendant's numerous assignments of error has convinced us that they are without merit. They are accordingly all overruled.

Judgment affirmed.