## McKeesport City, Appellant, *v.* Standard Surety and Casualty Company of New York.

Argued March 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

168

*Harry M. Jones,* for appellant.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellee.

Opinion by Mr. Justice Stern, April 19, 1937:

This action is a sequel to *Fehrs v. McKeesport,* 318 Pa. 279. Quoting from the opinion of Mr. Justice Simpson in that case: "The City of McKeesport . . . had been improving a 147-acre park for public use. In the course of the improvement it removed stumps of old trees, blasting them out with dynamite, dynamite caps and fuses. Prior to May 17, 1931, the park had been opened to public use, although the improvement had not been fully completed. On that day the minor plaintiff . . . was taken for a walk in the park by his cousin and two . . . girls. . . . He was carrying with him a small toy . . . and, in the course of the walk, lost . . . a part of the toy, and turned back to search for it. Not finding it, he continued on his backward journey until he reached his uncle's house. . . . The rest of the children continued their walk through the park, until one of the girls picked up a dynamite cap from the

ground near a hole, where a stump had been blasted out. None of the party knew what the article was. . . . When the girls came back they found him (the minor plaintiff) at his uncle's back fence, and . . . gave the dynamite cap to him. . . . He . . . attempted to empty it by means of a nail and a stone. The result was an explosion which caused . . . injuries to him. . . . A short time after the accident a number of other unexploded dynamite caps, like the one found by the children, were found at various places in the park, and it was shown that they were of the same character as those which had been used by the city in its dynamiting work; and it was shown also that many of the dynamite caps, purchased by the city for use in removing the stumps, had never been used by it and their absence was not accounted for. . . . The city solicitor admitted . . . that there was sufficient evidence from which the jury could fairly have drawn the conclusion that the cap, which the girls found, had carelessly been left where it was by one of the city employees in the course of the work being done by them in improving the park."

Verdicts were rendered for the plaintiffs in that suit in the sum of $10,000, and were sustained by this court. The City of McKeesport had argued that the act of the girls in carrying the dynamite cap to a point outside the park, and there giving it to the minor plaintiff, was an active intervening agency which broke the chain of events sufficiently to relieve the city of legal responsibility, but the court overruled this contention. The City of McKeesport, having paid the verdicts, now seeks to recover from defendant company on a public liability insurance policy. To plaintiff's statement of claim defendant filed an affidavit of defense raising questions of law, and in support thereof assigned three reasons. In our opinion all of these reasons were valid ones, and the court below was right in sustaining the affidavit of defense and entering judgment for defendant.

Defendant agreed in the policy to defend suits instituted against plaintiff and to pay claims against it for damages from bodily injuries accidentally suffered "(a) resulting from the ownership, care, maintenance, occupation or use of the premises described in the Declarations . . .; *and* (b) occurring at, within, or upon the buildings or other specified work places of the assured or upon the sidewalks or other public ways immediately adjoining the territories disclosed in Item 3 of the Declarations . . . all of which are herein called 'the assured's premises.'" Liability under the policy was thus limited to damages from bodily injuries which not only resulted from the maintenance or use of the city's premises, but also *occurred upon such premises.* This was further clarified and confirmed by an "Endorsement Explaining Coverage," which stated that: "It is mutually understood and agreed that any reference in the under-mentioned policy to the 'Assured's Premises' shall contemplate claims for *injuries sustained at locations here-inafter mentioned* and not elsewhere." (Italics supplied.) The locations thereinafter mentioned were the streets and sidewalks of the city and several enumerated public parks, including the one where the dynamite cap had been picked up by the children. The injuries sustained by the minor plaintiff in the *Fehrs* case did not occur at, within, or upon the assured's premises, at any of the locations specified in the policy, but at the private residence of the minor's uncle, more than one-quarter of a mile distant from the park.

Plaintiff labors under the mistaken apprehension that the *Fehrs* case decided that the accident to the boy happened upon the city's premises, and therefore urges that "it would be a most unfair application of law to say that the accident *did* happen on the park premises and convict the municipality of negligence, and then, when the municipality seeks to recover from the carrier that insured the park premises, to say that the accident *did not* happen on the premises." The *Fehrs* case did not hold,

however, that the accident happened in the park, but merely that the city was liable because of its negligence in allowing the dynamite cap to lie exposed in the park where it could be picked up by children innocent of its dangerous potentialities, and since there was no break in the causal sequence of events it was immaterial that the cap was carried out of the park and injured the boy at some other place. The city's liability was not affected by the question as to where the boy was when he sustained his injuries. But the express terms of the policy on which the present suit is founded limit recovery to cases where the *injuries* occurred upon the assured's premises.

The second reason assigned in the affidavit of defense is that among the declarations in the policy "which the Assured makes and warrants to be true by the acceptance of this policy," was one to the effect that "There are no explosives intended for use as such, made, sold, kept, or used on the premises—except as herein stated: No Exceptions." This warranty was broken, because dynamite caps, which are explosives, *were* used on the premises, even if not used, at the time of the accident, in the immediate neighborhood of the place where this particular cap was found. Plaintiff contends that when the policy was issued defendant knew or should have known that dynamite was being used to blast the tree stumps in the park, and therefore should be estopped from setting up a breach of such warranty: *Central Market Street Company v. North British & Mercantile Insurance Company*, 245 Pa. 272, 278; *Headley's Express & Storage Co., Inc., v. Pennsylvania Indemnity Corporation*, 319 Pa. 240, 244, 245. But the statement of claim, which embodies by reference the record in the *Fehrs* case and thereby admits the use of the dynamite caps, contains no allegation or intimation that defendant knew, or by reason of the circumstances should have known, of such use; therefore the cases cited by plaintiff are inapplicable.

172

The final reason specified in the affidavit of defense is that the "Endorsement Explaining Coverage" provides that "Notwithstanding anything to the contrary contained in said policy, the coverage does not contemplate: . . . (b) Injuries caused by the prosecution of work being done by the assured or for the assured under contract." The injuries suffered by Fehrs were caused by the negligence of the employees of the city during the prosecution of work being done by it. The blasting operations were still being carried on at the time of the accident. It is true that Fehrs was not injured while one of the dynamite caps was actually being exploded by the city, but the negligence of the city's workmen in allowing a cap to be placed or to fall and remain in the park, and in not making certain that all unexploded caps were accounted for and removed, which negligence ultimately resulted in the injuries to Fehrs, took place in the general course of prosecution of the work, and, from a legal standpoint, was a part of it. The accident was therefore excluded from the coverage of the policy.

Judgment affirmed.