# Gass *versus* The Citizens' Building and Loan Association.

In a suit by a building association against a surety upon a bond given to said association, the surety defended on the ground that he had made a parol agreement with the agent of said association whereby he was to be released from liability in the event of a certain contingency : *Held*, that he was bound to show that the agreement was made with the knowledge of the officers of the association, or that the agent was acting, at the time, within the scope of the authority confided to him by the board of directors, or that his declarations were made in the course of business which the board authorized him to transact, and that the contingency had arisen, and that the evidence in this case did not establish such a defence.

June 8th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Northumberland county :* Of May Term 1880, No. 144.

Feigned issue, wherein Martin Gass, was plaintiff, and the Citizens' Building and Loan Association of Centralia, was defendant, to try whether a certain judgment of the association against Gass had been paid or satisfied, or whether he had been released or discharged from the payment of the same.   The issue was framed upon the following facts :

In February 1873 J. J. Hoagland applied to the association defendant for ten loans of $200 each, amounting in the aggregate to $2000, when the board of directors decided to grant him four loans, or $800 thereof, upon the security of his own property in Columbia county, but inasmuch as there was at that time a prior lien in favor of the Centralia Mutual Saving Fund Association

[Gass *v.* Citizens' Building and Loan Association.]

against Hoagland's property, the association requested him to give them additional security, and he then offered them his father-in-law, Martin Gass, as surety, and the association, after an examination of his property, accepted him, and a bond and mortgage were executed, with Hoagland as principal and Gass as surety thereon. Judgment was afterwards entered on the bond by virtue of a warrant of attorney contained therein.

On the 21st of November 1877, Gass presented a petition to the court, asking that said judgment should be stricken off or opened, and he let into a defence, and the court, after hearing, opened the judgment and made the rule absolute as to Gass.

At the trial Gass offered to show that at the time of the execution of the bond there was a parol agreement to the following effect: That when he agreed to become the surety of Hoagland the latter informed him that the association agreed to hold him liable as surety only until the lien of the Centralia Mutual Saving Fund Association had expired, or when the "old fund," as it was called, ran out. To sustain this alleged agreement, he gave in evidence a certified copy of the record of the Court of Common Pleas of Columbia county, whereby it appeared that the judgment of this saving fund against Hoagland, entered March 13th 1871, had not been revived, and that, therefore, its lien had expired on March 13th 1876.

J. J. Hoagland, a witness called for plaintiff, on cross-examination testified : " Mr. Gass was to be released when the old fund run out; the last payment on the old fund run out in January 1874; it has not run out; they are trying to make an assessment now; I am secretary of the company now; the old association had run out in January 1874, as we supposed; there are debts now standing that we are trying to collect, and there is some property to be sold; the old association has issued notices to members to pay in one or two payments to pay off the shares; our secretary made up a statement, and there is about $1400 to pay yet, as near as we can get at it; when I speak of the old association running out, I mean that it had started to run ten years, and that we found it was going to run out sooner, and that was about 1874; * * * I would not consider the old association finally settled until all the judgments and property had been sold and collected in; * * * I told Gass they agreed to release him when the old fund run out; all the information Gass had about this matter he received from me; I presume that this last loan was made on the strength of Gass going bail."

J. P. Hoagland, another witness called for plaintiff, testified: " I was secretary of the association at the time the loan was made to my father, J. J. Hoagland; I think there were ten shares loaned to him, $2000. Martin Gass was offered as bail on six shares, or $1200 of the $2000; the board of directors decided to give J. J. Hoagland a loan of $800 upon his own security, and for the balance,

$1200 (six shares), he was to give Martin Gass as security; that was the only thing that was embodied in the motion, though there was a general conversation taking place in the room that if the old saving fund should expire he would be released; Martin Gass was to be released; that was not embodied in the regular motion for the loan; that was the conversation through the room by the board of directors—directors of the Citizens' Building and Loan Association; the old fund was called, I believe, the Centralia Mutual Saving Fund Association, * * * The board of directors did not authorize me to inform Mr. Gass on the subject of release at any time; I had no authority whatever from the board to go to him; I went at the request of their attorney, who was called out of town; I did not communicate to the other members of the board of directors at a meeting what my father had told me relative to the conversation he had with Mr. Gass; I don't think my father was a member of the board at the time of this conversation relative to the release; Mr. Dyke is all I can recollect of the members who talked about this question of release; it was talked at a meeting of the board; the board was in session; J. J. Hoagland was not present at the time."

Gass, the plaintiff testified: "J. P. Hoagland brought the bond and mortgage to me; I had no interest in them; I got no portion of the proceeds of the loan; I was asked to execute the bond as bail for J. J. Hoagland; J. P. Hoagland came there for me to sign that bond and mortgage; I understood him to say that the board (some of them) had sent him; he told me he 'was secretary of the association'; I asked him whether the understanding was that I was to be released when the loan on the old saving fund expired, and he told me 'Yes, if the old saving fund against J. J. Hoagland expired'; and he said 'that was the understanding by the board,' that he 'heard them say so.' I told him 'under that arrangement, that I was to be released, I would sign it; if that was the case.' I think these were the words I used, 'if that is the case I'll sign it.'"

The 4th and 8th points of the defendant, both of which the court affirmed, are as follows:

4. That no authority has been shown by the plaintiff to have ever been given by the defendant, either to the committee of investigation or to J. P. Hoagland, to represent to Martin Gass, that he would be released as bail of J. P. Hoagland, when the old fund ran out, or was paid, and without authority from the board of directors, such representations, if made, would not bind the defendant.

8. That by plaintiff's own showing, any representations made by J. P. Hoagland, who took the bond and mortgage to Gass for execution, were made without authority, and could not be binding on the defendant.

In the general charge the court, inter alia, said:

"I will say to you as a matter of law that it does not follow that

[Gass v. Citizens' Building and Loan Association.]

it was necessary if there was an agreement by the board of directors to release Gass upon any condition, that it should be put in writing upon the books of the corporation. But it is necessary for Gass to show you clearly and satisfactorily, that there was such action on the part of the board of directors. A mere talk without coming to any conclusion or agreement between them would amount to nothing at all. Whether there was such a conclusion and agreement or not on their part we leave you to determine from all the facts and circumstances in evidence. * * *

"If you find from all the evidence in the case that at their meeting while they were an organized board of directors they agreed with Mr. Gass that if he became bail for Mr. Hoagland, he should be released upon the conditions he stated, and that after such agreement amongst themselves it was afterwards communicated by John P. Hoagland to Mr. Gass and Mr. Gass acted upon it then it would be binding upon the association. * *

"The counsel for Mr. Gass ask us to say to you as a matter of law, that if John P. Hoagland went there with the bond and mortgage for the purpose of procuring its execution by Mr. Gass, and made the representations as stated by him to Mr. Gass, without any authority, still Mr. Gass would be released. I do not charge you that this is the law."

Verdict for defendant, and after judgment thereon plaintiff took this writ, and alleged that the court erred, inter alia, in affirming the above points and in the foregoing portions of the charge.

*William C. Packer*, for plaintiff in error.—The association received the benefit of the contract made by their agent, and are bound by his declarations which induced said contract, although he exceeded his authority: Chartiers Railway Co. v. Hodgens, 4 Norris 507; McCarty v. Railroad Co., 6 Id. 332; Pittsburgh & Connellsville Railroad Co. v. Stewart, 5 Wright 55; Musser v. Hyde, 2 W. & S. 319.

*L. H. Kase* and *S. P. Wolverton*, for defendant in error.— J. J. Hoagland was not a member of the board of directors nor an officer of any kind, and surely had no power to bind the association. He did not even hear the running conversation that his son J. P. Hoagland says he is under the impression he heard, and he (J. J. Hoagland) says "all the information Gass had about this matter he received from me." His son took the mortgage down for Gass to sign. He says "he had no authority whatever from the board to go." None of the directors ever said anything to him on the subject, and he "did not communicate to the directors what his father told him, nor any conversation with Gass." Taking these statements as true they show that the "old fund" has not run out nor has the claim been paid. On the other hand all

[Gass *v.* Citizens' Building and Loan Association.]

the members of the board and the committee testified that there never was any such agreement or understanding as alleged by Gass and Hoagland, and that no such conversation was ever had as J. P. Hoagland says he is under the impression he heard. Surely in these transactions there can be no presumption of authority to bind the association. [See Jones *v.* The National Building Association, 13 Norris 215.—Rep.]

Mr. Justice STERRETT delivered the opinion of the court, October 4th 1880.

The verdict, in favor of the defendant in the feigned issue, if not demanded was fully justified by the uncontradicted testimony of the plaintiff's principal witnesses; and there appears to be nothing in the instructions complained of that could have unduly prejudiced the plaintiff's case. His contention was that, as surety for his son-in-law, Hoagland, he executed the bond on which judgment was entered, with the verbal understanding or agreement that he should be released from all liability as soon as the loan of the Centralia Mutual Savings Fund Association to Hoagland, or "old fund," as it is termed, ran out or was paid. To maintain the issue, on his part, it was necessary for him to prove not only that the alleged understanding or agreement existed, and that he became a party to the bond on the faith of it, but that the savings fund loan had by its terms expired or was fully paid; and, if either of these essential facts was not clearly established by the testimony the issue was justly determined against him. It is very evident from an inspection of the testimony that he not only failed to show that the loan referred to was paid or in any manner satisfied; but, on the contrary, he actually proved that it was still unsettled and payment of additional instalments had been demanded by the company. His son-in-law, Hoagland, for whom he became surety in the bond held by the defendant, testified that the loan from the Centralia Mutual Savings Fund Association was not fully paid. Speaking of that association he says, "it has not run out; they are trying to make an assessment now. I am now secretary of the company. The old association had run out, as we supposed, in January 1874; but there are debts that they are now trying to collect, and there is some property to be sold." He further testified in substance that formal demand had been made on the members, of which he was one, for additional instalments to pay off the shareholders, and they would be compelled to pay, unless a sufficient amount was realized from collections and sales of property; and that he did not consider the association finally settled until all the judgments are collected and property sold. It was impossible for the jury, with such testimony before them, to escape the conclusion that the condition on which the plaintiff claimed he was to be released as surety had not yet been fulfilled.

[*Gass v. Citizens' Building and Loan Association.*]

The plaintiff's testimony, tending to prove the alleged understanding or agreement on the faith of which he became surety for Hoagland, was received and submitted to the jury with appropriate instructions.  The learned judge charged, in substance, that it was necessary for him to show clearly and satisfactorily that the board of directors had assented to the condition on which he proposed to become surety ; that a mere talk on the subject among members of the board without arriving at any conclusion or agreement among themselves would amount to nothing ; that, if from all the facts and circumstances in evidence they found that the board of directors did agree that in case he should become surety for Hoagland he should be released upon the condition alleged ; and if this consent of the board was communicated to him and he acted on it, the association would be bound thereby.  This instruction was certainly quite as favorable to the plaintiff as he had a right to ask.  Indeed the court, with great propriety, might have instructed the jury that, upon his own showing, the plaintiff was not entitled to a verdict.

The only persons with whom the plaintiff appears to have had any communication on the subject of the suretyship, prior to the execution of the bond, were his son-in-law, J. J. Hoagland, and J. P. Hoagland, the secretary of the association defendant.  It is not pretended that the former, by his acts or declarations, could bind the association ; but it is claimed that it was bound by the statements of J. P. Hoagland, alleged to have been made at the time plaintiff signed the bond.  This might have been so if it had been shown that, at the time the declarations were made, Hoagland was acting within the scope of authority confided to him by the board of directors, or that they were made in the course of business which the board authorized him to transact ; but such was not the case.  He himself testifies that he was not authorized by the board of directors to make any statement to plaintiff on the subject of the loan or his release as surety, and that he had no authority from them to call upon him for any purpose.  This is the only testimony on the subject of his authority to make any statement to plaintiff or transact any business with him on behalf of the board.  It cannot be pretended that corporate rights may be thus frittered away, or liabilities created by loose and unauthorized declarations made by persons who at the time are not authorized to represent the corporation in relation to the subject concerning which the declarations or representations are made.

There is nothing in any of the assignments of which the plaintiff has any just reason to complain.

Judgment affirmed.