## Sitler *v.* Spring Garden Mutual Fire Insurance Company of York County, Appellant, (No. 1).

*Insurance—Fire insurance—Incumbrances—Waiver—Notice—Corpora-
tions.*

  An insurance company cannot be charged with notice of incumbrances
which an applicant for insurance had failed to disclose in his application,
by evidence that the secretary of the insurance company, who was also
secretary of a building association which owned certain of the incum-
brances, had while acting in the latter capacity acquired knowledge, more
than a year before the date of the policy, of the existence of the incum-
brances, and that a year and a half after the policy was issued the secre-
tary again acting for the loan association in a transaction in which the
insurance company had no interest had seen the record of judgments against
the insured.

*Corporations—Officers—Knowledge of officers.*

  The knowledge of an officer of the corporation which will affect the
corporation with constructive notice, must be gained by the officer while
acting for the corporation in the matter to which it relates.

  Argued March 18, 1901.    Appeal, No. 20, March T., 1901,
by defendant, from judgment of C. P. York Co., Oct. T., 1900,
No. 25, on verdict for plaintiff in case of E. J. Sitler v. Spring

Garden Mutual Fire Insurance Company of York County.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Assumpsit on a policy of fire insurance.   Before W. F. B. STEWART, J.

At the trial it appeared that the plaintiff in his application for insurance had failed to disclose the fact that there were in existence four judgments against himself which were liens upon the property which he desired to have insured.   The plaintiff claimed that the defendant had knowledge through its secretary, George W. Fry, of the existence of the judgments.   It appeared that Fry was not only secretary of the insurance company, but also of the Spring Garden Building & Loan Association which owned three of the judgments.   The court under objection and exception permitted Fry, when called as for cross-examination, to be examined as follows:

" Q. Did you know at that time that there was a judgment against the plaintiff for $500 in favor of the Spring Garden Building and Loan Association No. 1 ?   A. Well, I knew that we had loaned some money to him, yes, sir, but whether I thought of it at that time, I don't remember.   Q. Did you know there was a judgment, No. 111, January term, 1897, for $700 ?   A. I don't know that I thought of it at that time.   Q. Then, Mr. Fry, you mean to say that at that time you knew it, but you can't say whether or not you thought of it ?   A. Well, I know that we had made some loans to Mr. Sitler at different times, but whether or not I thought of it at the time this application came in, that I can't say.   Q. Did you know at the time the policy was issued, that there was a judgment against Sitler to the amount of $700 in favor of the same loan association ?   A. Well, I can't remember all the loans, Mr. Black.   I don't know whether it was $700 or $600 or $500, unless I would look.   Q. Do you remember that there was a judgment against him for $100 in favor of the same association of February 5, 1897 ?   A. I can't say that I knew it at that time, no, sir, at this particular time, when the application came in.

Mr. Black: " Q. Then, as I understand you, Mr. Fry, what you have testified goes to this extent in regard to this proposition ; in respect to these three loans of the building and loan

association; that you had knowledge of those loans at the time this policy was issued, but you can't say whether or not that knowledge was recalled to your mind at the time you accepted the policy? A. I didn't know that; if then at that time I knew that he had borrowed money from us, I didn't know whether it was one, two, three or half a dozen times. Q. Did you know at that time—at the time the policy was issued—that there was a lien for the amount of $2,750 entered April 13, 1898, against the plaintiff, and in favor of Kindig & Bros.? A. No, sir. Q. Did you know nothing of that lien? A. No, sir, not at that time. Q. When did you first know that lien? A. About a year ago, I think; Mr. Sitler had made application for some money, and I looked him up, and I saw that lien of $2,700 and some dollars. Q. You looked him up and saw the lien in favor of his brother-in-law and also the lien in favor of the First National Bank? A. If it was entered at that time, I did. Q. Can't answer that question, Mr. Fry? A. I don't know whether I did. Q. After you looked Mr. Sitler up, as you have just testified, and found that these liens existed against him, did the defendant company—"

The witness (interrupting) Mr. Black: "I want to correct that; that was last January and not a year ago, was when I made the search. Q. Then do I understand you, Mr. Fry, to say that you found all the judgments which were entered against him at that time? A. I think so, if I made a correct search. Q. And this judgment in favor of the First National Bank was entered on May 20, 1899, and therefore you saw that? A. If it was entered, yes. Q. Now Mr. Fry, after you looked Mr. Sitler up, and found these liens entered against him, did the defendant company take any action looking to the cancellation or avoidance of his policy? A. No, sir. Q. After that time the defendant company laid an assessment against his premium notes? A. Yes, sir."

Mr. Wanner. "Q. You have been asked about your knowledge of these liens against Mr. Sitler; the lien of the building association was originally entered according to the records March 19, 1895. Can you tell us—can you say that you had any recollection at all of that loan at the time this application came into the company? A. None whatever; if I had, I would have reported it to the board when the application was ap-

proved. Q. Can you say that you had any recollection at the time that you received that application and turned it over to the board, or at the time the policy was issued, of the other two liens of the building association against Mr. Sitler? A. No, I didn't think of it at the time. Q. Had you at that time any knowledge at all about the Kindig judgment, at the time when the application was made? A. No, sir. Q. As I understand you, you found that out afterwards when you went to make a search? A. Yes, I found that out after this last January search. Q. You say you had no knowledge of the judgment of the First National Bank unless you may have seen it when you made the search in January of this year? A. Not unless I saw it this last January. Q. Do you have any recollection now whether you did actually see it at that time or not? A. I would not like to say for a certainty, no, sir. If I made a correct search I saw it. If I did not, I didn't see it, that is all. Q. If you made a correct search and saw all the judgments, then you must have seen that; that is all you can say about it? A. Yes, sir. Q. State whether or not to your knowledge, any notice was given at any time to the insurance company of the existence of these liens against Mr. Sitler previous to this loss. A. No, sir" [13]

The court refused to give binding instructions for defendant. [9]

Verdict and judgment for plaintiff for $996.50. Defendant appealed.

*Errors assigned* among others were (9) above instruction, quoting it. (13) Ruling on evidence, quoting the bill of exceptions.

*Nevin M. Wanner*, for appellant.—A waiver is not to be implied from the mere silence of one party unless it is obligatory upon him to speak, to prevent the other party from being misled to his prejudice : Titus v. Glens Falls Ins. Co., 81 N. Y. 419 ; Beatty v. Lycoming Co. Mut. Ins. Co., 66 Pa. 17 ; Diehl v. Adams Co. Mutual Ins. Co., 58 Pa. 452 ; McFarland v. Kittanning Ins. Co., 134 Pa. 590 ; O'Reilly v. Guardian Mut. Life Ins. Co., 60 N. Y. 169 ; Armstrong v. Agricultural Ins. Co., 130 N. Y. 560 ; Gibson Electric Co. v. Liverpool, etc., Ins.

Co., 159 N. Y. 418; First National Bank of Kansas City v. Hartford Fire Ins. Co., 95 U. S. 673; West End Hotel & Land Co. v. Amer. Fire Ins. Co., 74 Fed. Repr. 114; Mueller v. South Side Fire Ins. Co., 87 Pa. 399.

Nothing but some unequivocal official act or declaration of the company expressly intended to revivify the contract can make it binding again : Beatty v. Lycoming Co. Mut. Fire Ins. Co., 66 Pa. 17; Sullivan v. Conn. Indemnity Assn., 101 Ga. 809; Elliott v. Lycoming Co. Mutual Fire Ins. Co., 66 Pa. 22.

There was no sufficient evidence of a waiver of this forfeiture to send to a jury, in this case, as the very fact of the secretary's having seen the last judgment after it was entered up, was entirely uncertain and only inferential. It was insufficient to support a verdict for plaintiff : Freedman v. Providence Washington Ins. Co., 175 Pa. 350; N. Y. Central Ins. Co. v. Watson, 23 Mich. 486; Clement's Ins. Dig. p. 216, sec. 224; Elliott v. Lycoming Co. Mutual Fire Ins. Co., 66 Pa. 22; Gould v. Dwelling House Ins. Co., 134 Pa. 570; Akers v. Hite, 94 Pa. 394.

*J. S. Black,* for appellee.—The defendant is estopped : Wilson v. Mutual Fire Ins. Co., 174 Pa. 554; Kalmutz v. Northern Mut. Ins. Co., 186 Pa. 571; McFarland v. Kittanning Ins. Co., 134 Pa. 590; Mix v. Royal Ins. Co., 169 Pa. 639; Niagara Fire Ins. Co. v. Miller, 120 Pa. 504.

OPINION BY W. D. PORTER, J., July 25, 1901 :

At the time this contract of insurance was effected, there were in existence four judgments against the defendant which were liens upon the property insured. Three of these judgments had been entered and were held by the Spring Garden Loan and Building Association No. 1 and were of the dates and amounts following, viz : March 19, 1895, $500; January 11, 1897, $700 and February 5, 1897, $100. The fourth was held by Henry Kindig and had been entered April 13, 1898, for $2,750. All these judgments continued in force and were liens at the time the property was destroyed by fire, on July 4, 1900. The policy of insurance was dated and issued July 2, 1898, and a copy of the application, as signed by the applicant, was made part thereof and indorsed thereon. The plaintiff stated in this ap-

plication that the property was not incumbered, and never afterwards notified the company of the existence of these judgments. The learned judge of the court below held that, under the contract of insurance, the existence of these judgments invalidated the policy, but that the provision of the policy being for the protection of the company they might waive it, and submitted to the jury the question of such waiver. It is conceded by the appellee that, under the terms of the policy, the existence of the liens made the contract void unless the conduct of the defendant company had been such as to estop it from asserting that invalidity. It is therefore unnecessary to enter into any analysis of the provisions of the policy.

It being undisputed that there was a breach of the covenants of the policy, the burden was upon the plaintiff to establish by evidence such facts as would prevent the company from now asserting that breach. The plaintiff attempted to discharge this burden by showing that the company had notice of the existence of the fact against which he had covenanted, and with such knowledge treated the contract as subsisting by making and collecting assessments under it. Had the evidence been sufficient to establish knowledge by the company of the existing conditions and an acquiescence in them the theory of the defense was sound: Niagara Fire Insurance Company v. Miller, 120 Pa. 504; Kister v. Lebanon Mutual Insurance Co., 128 Pa. 553. Had the incumbrance in question been a mortgage and the plaintiff had shown that at the time of the transaction in question and in immediate connection therewith the company had issued a policy upon the interest of the mortgagee, so that the attention of the officers would be directed to the relation of these policies to each other, the company would be held to have notice of the facts: State Insurance Company v. Todd, 83 Pa. 272; Wilson v. Mutual Fire Insurance Co., 174 Pa. 554. The theory of the defense was correct but the evidence was not sufficient to support it. The testimony presented to the court related entirely to the knowlege of the secretary of the defendant company, derived from outside sources, of the incumbrances in question.

It is sought to impute notice to the company from these facts. George W. Fry, the secretary of the defendant company, was also secretary of the Spring Garden Loan and Building Association No. 1, a distinct and separate corporation. He was called

as a witness, by the plaintiff, and testified that as secretary of the Loan and Building Association he knew of the entry by that corporation of the several judgments against Sitler at the time they were respectively entered. He was interrogated, as if under cross-examination, at considerable length as to what his recollection of those judgments had been at the time the policy in question was issued, and the result is fairly summarized in one of his answers. " Q. Then, Mr. Fry, you mean to say that at the time you knew it, but you can't say whether or not you thought of it? A. Well, I knew that we had made some loans to Mr. Sitler at different times, but whether or not I thought of it at the time this application came in, that I can't say." It must be borne in mind that when the witness says, " We had made some loans," he referred to the loan association, and not the insurance company. It is not strange that the secretary on receiving this application failed to remember that an independent corporation with which he was connected had claims against the insured, for the last judgment had been entered more than a year prior to that time. Was he to assume that the judgments had not been satisfied and that the applicant was guilty of falsehood? The witness testified that at the time this policy was issued he had never heard of the judgment for $2,750 held against the defendant by Kindig. This was the sum total of the testimony as to knowledge of the secretary at the time the policy issued. But it is maintained that even if the secretary did not have knowledge, which would visit the company with notice, at the time the policy issued, he did afterwards acquire such knowledge. Fry testifies, that in January, 1900, Sitler applied to the loan association for some money, " I looked him up and saw that lien of $2,700 and some dollars," the Kindig judgment. He was asked whether at that time he saw a judgment against the insured in favor of the First National Bank, for $4,000, which had been entered after the policy was issued, and which was a lien at the time of the fire, and he replied in effect that if it was entered and he made a correct search, he found it, but he could not remember. In making this search, if he made it, the witness was acting not for the insurance company but for the loan association. In that employment he owed no duty to the defendant company. Can it be said that a secretary of an insurance company who, while engaged in an

occupation having no connection with his official duty, such as that of a conveyancer or officer of a title company, discovers a judgment, is bound to take notice of the fact that it has a bearing upon the rights of the insurance company under some one of its thousands of outstanding policies? The testimony as to the knowledge of Fry derived from sources having no connection with the business of the company was received under exception by the defendant and the admission thereof is now assigned for error.

The secretary of an insurance company is an executive officer, but the power of an officer of a corporation to bind his principal is subject to the limitations which apply to all other agents. The error of the argument in support of plaintiff's contention consists in treating George W. Fry as the Spring Garden Mutual Fire Insurance Company. A corporation necessarily acts through its officers, but the authority of any officer to represent the company is limited by the powers committed to him. Such officers only bind the corporation when they undertake to represent it and act within the limits of their authority. The authority conferred may be extensive, yet the officer is still an agent. The same person may be an officer of two independent corporations, and his acts while representing one will no more bind the other than the acts of a stranger: Custar v. Titusville Gas & Water Co., 63 Pa. 381; Gass v. Citizens' Building & Loan Association, 95 Pa. 101; Johnston v. B. & L. Association, 104 Pa. 394; Pennsylvania R. R. Co.'s Appeal, 80 Pa. 265; Bard v. Penn Mutual Fire Insurance Co., 153 Pa. 257; Hook v. Mutual Insurance Co., 160 Pa. 229; Wilson v. Mutual Fire Insurance Co., 174 Pa. 554. The knowledge of an agent which will affect his principal with constructive notice must be gained by the agent while acting for the principal in the matter to which it relates. Mr. Justice MITCHELL who spoke for the court in McSparran v. Southern Mutual Insurance Co., 193 Pa. 184, said: " Notice is knowledge or information legally equivalent to knowledge brought home to the party notified, in immediate connection with the subject to which the notice relates." More than a year before the date of this policy, in a transaction in which the insurance company had no interest, Fry acquired knowledge that the loan association, of which he was secretary, held judgments against Sitler; the former had

then no information that the latter ever intended to apply for this insurance, and when the insurance was applied for there was nothing to suggest the existence of the judgments. A year and a half after the policy was issued Fry, while again acting for the loan association in a transaction in which the defendant company had no interest, may have seen the record of the judgments against Sitler, but there was then nothing to suggest a connection between those judgments and the subject of the insurance in question. It was incumbent on the plaintiff, in order to estop the company from asserting the right of forfeiture, to show that the knowledge of Fry was gained in connection with the exercise of the authority conferred by his principal, the defendant: Bracken v. Miller, 4 W. & S. 102; Lycoming Insurance Company v. Mitchell, 48 Pa. 368; Barbour v. Wiehle, 116 Pa. 308; Langenheim v. Anschutz, 2 Pa. Superior Ct. 285; Wetzel v. Linnard, 15 Pa. Superior Ct. 503. In commenting upon the principle here applied it was said by Mr. Justice SHARSWOOD, in Houseman v. Girard Mutual Building & Loan Association, 81 Pa. 256: "The true reason of the limitation is a technical one, that it is only during the agency that the agent represents, or stands in the shoes of his principal." The evidence offered by the plaintiff was incompetent to establish an estoppel. That which was admitted was insufficient to warrant the submission to the jury of the question of notice to the defendant that the property was incumbered: Elliott v. Lycoming County Mutual Ins. Co., 66 Pa. 22; Penna. Mutual Fire Ins. Co. v. Schmidt, 119 Pa. 449. The defendant was entitled to the binding instructions requested in its eighth point and the ninth assignment of error is sustained.

The judgment is reversed.