## ST. LOUIS FIRE & MARINE INS. CO. v. WITNEY et al.

### Civ. A. No. 3540.

United States District Court
M. D. Pennsylvania.

March 9, 1951.

558

Ben R. Jones, Jr. (of Bedford, Waller, Jones & Darling), Wilkes-Barre, Pa., A. C. Trippe (of Hogsett, Trippe, Depping, Houts & James), Kansas City, Mo., for plaintiff.

John H. Bigelow, Hazleton, Pa., for defendant Witney et ux.

Edward W. Warren of O'Malley, Harris, Harris & Warren, Scranton, Pa., for defendant Miners Bank & Trust Co. of West Hazleton.

MURPHY, District Judge.

Plaintiff, a Missouri corporation authorized to do business in Pennsylvania, through its duly authorized agent, Elwood Jones, issued, countersigned and delivered on April 4, 1948, to defendants, Edwin H. Witney, et ux, as owners, and to defendant bank as mortgagee, a one year term policy of fire insurance in the sum of $18,000.00 covering a dwelling house located in Hazleton, Pennsylvania, in this district. November 1, 1948, the owners leased a part of the premises for use as a bakery. Thereafter, such use continued to March 13, 1949, when the building was totally destroyed by fire.

The insurer refused the demands of the owners and mortgagee, respectively, for payment under the policy, insisting the change of occupancy and increase of risk occurred within the knowledge and control of the owners and with the knowledge and consent of the mortgagee; that plaintiff had never been notified thereof by either owners or mortgagee, an alleged prerequisite to recovery by either of them.

Plaintiff moved for a declaratory judgment of non-liability.[1] Defendants' answers denied several material allegations essential to plaintiff's cause. The owners insist there are questions of fact that can only be decided by a jury; defendants owners and mortgagee, respectively, prayed for judgment in their favor. Depositions were taken on behalf of plaintiff and defendants. Plaintiff then moved for summary judgment.[2]

Jurisdiction is based on diversity only. All the operative facts occurred in this district. We look therefore to Pennsylvania law to determine the substantive rights of the parties.[3]

The pertinent policy provisions are:

*As to the owners.* "Conditions suspending or restricting insurance. *Unless otherwise provided in writing added hereto* * * * this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

*As to the mortgagee.* " * * * the interest of the mortgagee * * * shall not be invalidated by any act or neglect of the * * * owner * * * nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the * * * owner shall neglect to pay any premium due under this policy, the mortgagee * * shall on demand pay the same.

"*Provided, also that the mortgagee * * shall notify this company of any change of*

---

1. 28 U.S.C.A. § 2201 (formerly 28 U.S.C.A. § 400); Fed.Rules Civ.Proc. rule 57, 28 U.S.C.A. See Aralac, Inc., v. Hat Corp. of America, 3 Cir., 166 F.2d 286; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288, 293.

2. We do not pass on questions of credibility or weigh the evidence, nor interfere with the right to trial by jury of disputed material facts. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S. Ct. 724, 88 L.Ed. 967. Affidavits may be used to determine if a fact issue is presented not to decide such issue. Frederick Hart & Co., Inc., v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580. All doubts as to the existence of a genuine issue to a material fact must be resolved against the moving party. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016.

3. Faron v. Pennsylvania Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290; Hardiman v. Fire Ass'n of Philadelphia, 212 Pa. 383, 61 A. 990; Solomon v. Neisner Bros., Inc., D.C.M.D.Pa., 93 F.Supp. 310.

\* \* \* *occupancy or increase of hazard which shall come to the knowle'dge of said mortgagee* \* \* \* and unless permitted by this policy it shall be noted thereon and mortgagee shall on demand pay the premium for such increased hazard for the term of the use thereof; otherwise, this policy shall be null and void." (Italics supplied.)

When Witneys purchased and mortgaged the property, Jones, a lawyer, acted as their counsel. At the time he represented six fire insurance companies, including the plaintiff, as agent. At Jones' request Witney gave him the insurance and told him to go ahead and protect his interest as to the property in question. Although he knew Jones represented several companies he did not know the name of any of them. No particular insurance company name was mentioned. Jones placed the insurance with the plaintiff. A Standard Mortgage Clause was added, and, in accordance with customary local banking practice, the policy was turned by Jones over to defendant bank. Witney never saw the policy; did not know the name of the insurer. Later, upon receipt of a bill from Jones, he paid the insurance premium.

When on April 4, 1948, the original policy, dated August 23, 1947, expired, Jones, without consulting Witney, "automatically" renewed the policy with plaintiff company. Later he billed Witney and received payment of the insurance premium.

November 1, 1948, Jones, as Witney's attorney and at his request, drew a lease dated the same date for a three year term from November 1, 1948, to November 1, 1951, naming Iwanowski as lessor of the first floor, the premises to be used as a bakery. At the time Jones knew that Iwanowski was engaged in the bakery business. Witney testified he did not know the new occupancy would make a material change in the risk; that Jones knew of the prelease negotiations and of the lease transaction itself; that on November 1 Jones advised him the change in occupancy

would involve an increased rate of insurance; he told him he did not care what it was, to bill him for it and he would pay it. Jones said the Rating Bureau would first have to inspect the premises and determine the amount of the increased rate. Said Witney, Jones had been doing this business right along and Witney just took it for granted that Jones would take care of the new insurance situation and bill him at the increased rate. Witney did not receive any such bill up to the time of the fire.

After the Witneys made substantial renovations to accommodate the premises for bakery purposes, Iwanowski, with Witney's knowledge, control, consent and approval, commenced bakery operations the end of November and continued same to the date of the fire.[4]

Other than the foregoing, the Witneys of themselves did nothing to notify either Jones or the plaintiff of the change in use and occupancy.

Jones' testimony is in many respects to the contrary; that he did not know of the pre-lease negotiations; the lease was not executed in his presence, nor did he know of the actual execution thereof. Witney was still dickering; negotiating as to the possibility of using the property as a factory, knitting mill, and as an apartment house. Witney was not certain November 1 Iwanowski would actually become the tenant and use the premises for bakery purposes; nor did either Witney or Iwanowski notify Jones to that effect. At the time Jones therefore had no definite knowledge as to the future use of the property. He understood the renovations were being made for apartment purposes.

Jones believes Witney indicated that when the renovations were completed and he knew the amount of money involved he would obtain additional insurance. He might have discussed with Witney that after the change in occupancy and use an additional insurance rate would be re-

4. There is some confusion in the testimony on the subject of the increased rate required because of the change in occupancy and alleged increase of hazard, and a need for additional insurance occasioned by the renovations which in turn would involve an increased rate. There is no claim as to increased insurance presented by this record.

quired. He does not recall any specific instruction from Witney to make any change as to the policy, or any mention by Witney on the matter of change of occupancy with relation to insurance coverage. Jones did not inspect the premises after November 1, 1948.

The first knowledge he had that the premises were actually being used as a bakery was on February 24, 1949, when Iwanowski came to his office to have some legal work done in connection with his bakery business. As an insurance agent he then asked his secretary in charge of insurance files to see whether or not any change of occupancy had been noted. Finding none, he immediately instructed her to write to the Rating Bureau to secure a rate. The letter written and mailed the same day,[5] was received by the bureau February 26, 1949; given to an inspector to visit the risk and determine the rate under the changed occupancy. The practice and custom being to wait until a number of inspections were to be made, the inspector did not visit the risk until March 28, 1949, when he learned of the fire.

G. D. Cassar, District Manager of the Middle Department Association of Fire Underwriters—known as the Rating Bureau—testified plaintiff was a member of the association; that fire insurance rates for members in the area are fixed by the bureau. He said that a change from a dwelling house to a manufacturing enterprise would undoubtedly involve an increase of rate; that the customary practice in case of a change of occupancy or increase of risk, when the risk required a specific rating, was for the agent to send a request to the bureau for a rate, and meanwhile indorse the policy showing the new situation, leaving the rate open subject to future determination.

If an indorsement was thus attached to a policy, a copy would be retained for the agent's file, a copy given to the insured, and a third copy sent by the agent to the bureau for transmission to the home office of the insuring company involved; that the letter of February 24 was notice to the bureau that there had been a change in occupancy of the insured property. Where, however, a letter is used, as here, the insured would not know that he was covered, and finally that the intent of the indorsement would be to continue the insurance in force.

■ When Jones learned of the change in use and occupancy, and that it had not been noted in the insurance file, the policy was then in the custody of the mortgagee bank and not readily available for indorsement. He had recently been notified by plaintiff as to the possibility of a general revision of rates in the area. He testified[6] that under the circumstances, based upon his knowledge of insurance transactions since 1933 and the practice in the office for twenty-two years, sending the letter to the Rating Bureau was the only possible thing he could do to notify the insurer, protect the insured, and at the same time continue the policy in effect; that once he received a rating from the bureau, the only other step necessary would be to collect the additional premium. Since he received no reply from the bureau he did not bill either the owners or the mortgagee for the additional premium.

5. "Middle Dept. Assn. of Fire Underwriters
 306 Newrose Building
 Pittston, Pennsylvania
 "Gentlemen:
 "Will you kindly rate the property of Edwin H. Witney and Mary Witney, his wife, situated on Lot 3, Square 'A', Valmont Section, North Broad Street, West Hazleton, Pa.? The property is occupied in part by a bakery and offices. Your prompt attention to this matter will be greatly appreciated."

6. As to the proof of agency—Jones was a competent witness to prove authority. Henry Pa. Trial Evidence, 3d Ed. § 77;

Jordan v. Stewart, 23 Pa. 244; Lawall v. Groman, 180 Pa. 532, 37 A. 98; Curran v. National Life Ins. Co., 251 Pa. 420, at page 435, 96 A. 1041; Hileman v. Falck, 263 Pa. 351, at page 354, 106 A. 633; Yubas v. Makransky, 300 Pa. 507, 150 A. 900; Fee v. Adams Express Co., 38 Pa.Super. 83.

Authority may be inferred from approval of past transactions. Flannery Bros. v. State Mutual Fire Ins. Co., 175 Pa. 387, 34 A. 798; Ulysses Elgin Butter Co. v. Hartford Fire Ins. Co., 20 Pa.Super. 384.

Further, that when in 1946 Prince & George, Inc., general agents for plaintiff in Pennsylvania, engaged him as agent for plaintiff company, they were fully advised of the practice followed in his office and approved it. The general agents then instructed Jones that in case of change of occupancy in any premises covered by a policy in plaintiff company, he should simply notify the Rating Bureau and they would carry on from there.

Said Jones, that papers sent to the Rating Bureau were for transmission by them to the plaintiff company; and further "everything we do in the insurance business—all policies written, all changes made, anything that occurs in the insurance business is sent to the Rating Bureau in behalf of whatever company we represent. The Rating Bureau then takes care of the changes. My only instructions have been to send everything to the Rating Bureau." Said Jones, that is the general procedure and customary practice among insurance agents in the Hazleton area.

Jones had no reason to assume the plaintiff company would not continue to insure the premises in question after the change in occupancy. They were already carrying $18,000.00 on the same building. He had been authorized to write policies on all types of risks, to issue binders, add riders and indorsements to policies on occasion pertaining to plaintiff's insurance business. The practice was to do so without first consulting plaintiff company.

At no time did Jones learn anything in regard to the change in use and occupancy in his capacity as a bank officer—he was President, Director, Solicitor and a member ex officio of the several committees of defendant bank. The administration of the affairs of the bank were conducted largely by an Executive Vice President and by the bank cashier. Jones testified that he did not communicate any such information to anyone in connection with defendant bank; that he had no reason to. The testimony showed that neither the directors nor anyone else in connection with the bank qua officers had any knowledge of the change in use and occupancy.

Plaintiff contends that since Jones was President, knowledge gained by him should be imputed to the bank. The bank contends any knowledge gained by Jones was while he was acting as counsel for Witney or Iwanowski or as insurance agent, but never as President, and that under these circumstances having no knowledge the bank was in no position to notify. "Notice to the agent, when it is the duty of the agent to act upon such notice, or communicate it to his principal in the proper discharge of his duty as agent, is notice to the principal, and applies to the agents of corporations as well as of others." City of Philadelphia v. Lockhardt, 73 Pa. 211, at page 217. See Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 327, at page 337, 37 A. 550.

Unlike many jurisdictions[7] Pennsylvania bases the rule whereby knowledge of the agent is imputed to the principal on the theory of legal identity of the principal and agent. It is well settled that the knowledge must be gained in the course of the same transaction, in which he is employed by his client. Hood v. Fahnestock, 8 Watts, Pa., 489; Langenheim v. Anschutz-Bradberry Co., 2 Pa.Super.Ct. 285.

"It is a mistake to suppose that * * * if it be proved that he actually had it in mind at the time, the rule is different * * * the * * * reason of the limitation is a technical one, that it is only during the agency that the agent represents, and stands in the shoes of his principal. Notice to him then is notice to his principal." Houseman v. Girard Mutual Building & Loan Ass'n, 81 Pa. 256, 262; Sitler v. Spring

---

7. See §§ 272 and 276, Restatement Agency; cf. Aiken Petroleum Co. v. National Petroleum Underwriters, etc., 207 S.C. 236, 36 S.E.2d 380, 385; In re Distilled Spirits, 11 Wall. 356, at page 366, 78 U.S. 356, at page 366, 20 L.Ed. 167; 2 Am.Jur., Agency, §§ 375, 376; 3 C.J.S., Agency, § 274; Citizens' National Bank of Green- castle v. Speck, 108 Pa.Super. 247, at page 253, 164 A. 810, holds that an agent who represents a corporation in all its dealings is the corporation and his knowledge is the actual knowledge of the corporation. The record does not show Jones as having acted in such capacity.

Garden Mutual Fire Ins. Co., 18 Pa.Super. 139, at Pages 146, 147.

"* * * Officers only bind a corporation when they undertake to represent it and act within the limits of their authority. The authority conferred may be extensive, yet the officer is still an agent. The same person may be an officer of two independent corporations, and his acts while representing one will no more bind the other than the acts of a stranger. The knowledge of an agent which will affect his principal with constructive notice must be gained by the agent while acting for the principal in the matter to which it relates." Id., 18 Pa.Super. at page 146.

"* * * information acquired by a lawyer while conducting transactions for one client is not to be considered as within his knowledge when acting as attorney for another client." Ross v. Mayflower Drug Stores, Inc., 338 Pa. 211, at pages 214, 215, 12 A.2d 569, at page 571.

"Conceding his agency was for both appellants and the mortgagee, it was not for both as to all transactions involved; the attorney was agent for appellants to secure the money; * * * for the mortgagee to obtain proper security for the money * * * Any information the attorney acquired while conducting transactions in behalf of one may not be considered as within his knowledge as agent of the other for different purposes." Kinch v. Fluke, 311 Pa. 405, at pages 412, 413, 166 A. 905, at page 908. And again "* * * not when secured in the course of other independent transactions." Hertzler v. Nissly, 295 Pa. 62, at page 65, 144 A. 824, at page 826; Byrne v. Dennis, 303 Pa. 72, at page 77, 154 A. 123; Barbour v. Wiehle, 116 Pa. 308, at page 316, 9 A. 520.

The real question is in what capacity did he act. Gunster v. Scranton Illuminating Heat & Power Co., supra, 181 Pa. at page 339, 37 A. 550.

Here there is no competent evidence to show knowledge as to defendant bank and nothing to support plaintiff in its defense that the mortgagee had violated any provisions of the policy.

A Standard Mortgagee Clause in a fire insurance policy creates a separate, distinct and independent contract of insurance in favor of the mortgagee. Willits v. Camden Fire Ins. Ass'n, 124 Pa. Super. 563, at pages 567, 568, 189 A. 559; Overholt v. Reliance Ins. Co. of Philadelphia, 319 Pa. 340, 344, 179 A. 554.

"Notwithstanding there may be * * * increased hazard, from the provisions of the contract, the insurance continues in full force for the benefit of the mortgagee though notice of such change had not been given to the insurance company. The notice required is to be given by the mortgagee when he knows of the changes * * *." Knights of Joseph Building & Loan Ass'n v. Mechanics Fire Ins. Co., 66 Pa.Super. 90 at Page 95.[8]

And as to binding instructions, see Sitler v. Spring Garden Mutual Fire Ins. Co., supra, 18 Pa.Super. at page 147, and Bitonti v. National Liberty Ins. Co., Inc., 96 Pa.Super. 521.

As to the claim of mortgagee, we will therefore deny plaintiff's motions for Judgment (declaratory and summary) and, on the contrary, grant the prayer of the mortgagee that Judgment be entered in its favor.[9]

As to the Witney claim—

Whether the risk was increased in violation of the terms of the policy and whether Witney notified Jones of the intended immediate use as a bakery and was led by Jones to believe the change was covered by insurance [10] being disputed are for the Jury.[11]

8. Even where there had been knowledge, notice within a reasonable time would be sufficient. Knights of Joseph Building & Loan Ass'n v. Mechanics Fire Ins. Co., supra, 66 Pa.Super. at page 95.

9. The balance due at the time of the fire was $13,291.26.

10. McCullough v. Hartford Fire Ins. Co., 2 Pa.Super. 233, at page 237; McGinness v. Caledonian Ins. Co., 78 Pa.Super. 376, quite similar on its facts, and see Continental Assur. Co. v. Jensen, 3 Cir., 46 F.2d 902, 904; Scull v. Scull, 109 Pa. Super. 226, at page 229, 167 A. 496.

11. Smith v. Penn Twp. Mut. Fire Ass'n, 323 Pa. 93, at page 100, 186 A. 130;

■ Assuming arguendo the risk was increased the policy would be suspended.[12] The Witneys could not recover unless they established that the policy had been continued by agreement indorsed thereon, or that the company waived the condition or proved facts which would estop the company from asserting such a defense. Kompa v. Franklin Fire Ins. Co., 28 Pa. Super. 425, at page 429.

■ Jones knew the terms of the lease—that it was to be used as a bakery commencing November 1. When Iwanowski informed him of the actual use of the premises he then, as insurance agent, examined the insurance files. Finding the change not noted, he wrote to the Rating Bureau advising them thereof and requesting a rate. He intended thereby to continue the insurance including the change subject to an additional rate. The policy being in the custody of the bank, no provision in writing was added thereto at the time.[13] Presumably, however, a copy of the letter was placed with Jones' copy of the policy. Since the bureau was the authorized and customary channel for notifying the insurer[14] the only one not specifically notified was the insured. The

Witneys were however bound by the acceptance of their offer[15] and liable for the additional premium.

Under the circumstances, disregarding Witney's testimony and relying solely upon that offered upon insurer's behalf, can the insurer escape liability under the policy?

■ Assuming arguendo that mere knowledge was not the notice demanded or equivalent to it,[16] here we have knowledge followed by Jones' conduct intending to continue the policy in force and to include the change under policy coverage. Such conduct dispenses with the necessity of proving notice. Eureka Ins. Co. v. Robinson, Rea & Co., 56 Pa. 256, at pages 266, 268; State Ins. Co. of Missouri v. Todd, 83 Pa. 272, at page 279; cf. McSparran v. Southern Mut. Ins. Co., 193 Pa. 184, at page 191, 44 A. 317.

■ Similarly as to the provision "unless otherwise provided in writing added hereto" such provision being for the benefit of the insurer may be waived by it or by a duly authorized agent acting in good faith in the course of his duties on the company's behalf; or the acts of the agent in relation thereto may estop the company

Jenkins v. Franklin Fire Ins. Co., 282 Pa. 380, at page 384, 127 A. 836; Long v. Beeber, Receiver, 106 Pa. 466, at page 471; Goldin, Pa. Ins. Law, 2d Ed., p. 304; Yentzer v. Farmers' Mut. Ins. Co., 200 Pa. 325, 49 A. 767; Bitonti v. National Liberty Ins. Co., 96 Pa.Super. 521. As to what constitutes increase of risk, cf. Goldin Id., p. 303, with 5 Appleman on Insurance, § 2941, p. 5, re Rife v. Lebanon Mut. Ins. Co., 115 Pa. 530, 6 A. 65; Lebanon Mut. Ins. Co. v. Losch, 109 Pa. 100.

12. Smith v. Penn Twp. Mut. Fire Ass'n., 323 Pa. 93, at page 97, 186 A. 130; 3 Williston on Contracts, Rev.Ed., § 762.

13. Cf. First National Bank of Mildred v. Home Ins. Co., 274 Pa. 129, at page 133, 118 A. 17. The company is presumed to know customary conditions under which the business of the insured's is carried on. 1 Goldin Op. Cit. supra, § 325, p. 221; Central Market St. Co. v. North British & Mercantile Ins. Co., 245 Pa. 272, 91 A. 662.

14. As to the Rating Bureau, see 40 P.S. § 1221 et seq., and § 231. Under the

general rule of agency, there may be a principal and agent relationship outside of the scope of the statute. See Pearl Assur. Co. Ltd. v. National Ins. Agency Inc., 150 Pa.Super. 265, at page 268, 28 A.2d 334, and see Follmer J., Jones v. Protection Mut. Fire Ins. Co., D.C.E.D.Pa., 95 F.Supp. 589.

15. Rossi v. Firemen's Ins. Co., 310 Pa. 242, at page 248, 250, 165 A. 16; Headley's Express & Storage Co., Inc. v. Pennsylvania Indemnity Corp., 319 Pa. 240, 247, 178 A. 816.

16. Quaere, does the doctrine of implied knowledge from notice of facts creating duty of inquiry apply? 29 Am.Jur.Ins. § 809, p. 615; Sykes v. Perry County Mut. Fire Ins. Co., 34 Pa. 79; Headley's Express & Storage Co. v. Pennsylvania Indemnity Corp., 319 Pa. 240, at page 245, 178 A. 816; Caldwell v. Fire Ass'n of Philadelphia, 177 Pa. 492, 35 A. 612; Exchange Mut. Fire Ins. Co. v. Consolidated Mutual Fire Ins. Co., 46 Pa.Super. 601.

from successfully setting up a breach of such condition as a defense to an action on the policy. Witmer v. Royal Ins. Co., Ltd., 68 Pa.Super. 12, at page 17; Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, at page 410, 144 A. 294; Collins v. Home Ins. Co. of New York, 110 Pa.Super. 72, 167 A. 621; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475; Sitler v. Spring Garden Mut. Fire Ins. Co., 18 Pa.Super. 148, 152; Goldin Op.Cit. supra, p. 298; Silas McFarland v. Kittanning Ins. Co., 134 Pa. 590, 19 A. 796; 29 Am.Jur. Insurance, § 800, p. 604. The waiver need not be expressed; it may be inferred. Fedas v. Ins. Co. of Pennsylvania, 300 Pa. 555, 559, 151 A. 285.

For examples of the various situations where waivers of provisions of policies have been sustained, see Isaac v. Donegal & Conoy Mut. Fire Ins. Co., 308 Pa. 439, at page 443, 444, 162 A. 300.

"The principle underlying these * * cases * * * is that where the company has knowledge of violation of a condition in the policy, and yet continues to treat the policy as in force, it cannot be permitted to set up such breach to defeat the contract. Presuming that the company did not intend to act dishonestly, the condition is considered as having been waived." Kalmutz v. Northern Mut. Ins. Co., 186 Pa. 571, at page 576, 40 A. 816, at page 817. " * * * estoppel * * * is the true ground upon which the doctrine of waiver in such cases rests." Elliott v. Lycoming County Mut. Ins. Co., 66 Pa. 22, at page 26.

 Waiver is the voluntary relinquishment of a known right. Estoppel rests upon the misleading conduct of one party to the prejudice of another. The latter requires consideration the former does not. Globe Indemnity Co. v. Cohen, 3 Cir., 106 F.2d 687, at page 691; and see Antone v. New Amsterdam Casualty Co., 335 Pa. 134, at page 140, 6 A.2d 566. The distinc-

tion is fairly clear where waiver is expressed, less so where implied from conduct. 29 Am.Jur. § 799, p. 603, 604.

Plaintiff argues that neither waiver nor estoppel are available to bring within coverage of the policy risks not covered by its terms or risks expressly excluded therefrom. See Note 113 A.L.R. 857; 29 Am. Jur. Insurance § 801, p. 607, § 903. He relies principally upon Antone v. New Amsterdam Casualty Co., 335 Pa. 134, 6 A.2d 566. We find no aid for his position in either citation.

An examination of the Antone case shows clearly that it has no applicability to the present situation. Said the court, 335 Pa. at page 138, 6 A.2d at page 568, "The cases in Pennsylvania and elsewhere that recognize the estoppel theory in insurance contract cases are all cases where some contractual relationship existed between the parties. Before a court can say that a company is estopped to deny that 'it waived the condition of the policy', there must be a covering policy. But where there is no policy, there is no condition to be waived. * * * Here the doctrine of estoppel is being used, not to make a contract operative, but to create a contract where none existed." And again, 335 Pa. at page 141, 6 A.2d at page 569, "Since Antone had no contractual relations whatever with the insurance company, he cannot invoke any estoppel against it. An estoppel 'can operate neither in favor of nor against strangers.' "

See Note 113 A.L.R. at page 857. "The annotation deals only with implied waivers, for it may be conceded that any condition, irrespective of its character, may be waived by express agreement to that effect, supported by a valuable consideration."

 Jones, as plaintiff's authorized agent to issue and countersign policies, had full power and authority to accept the additional risk.[17] The increase in risk did not

---

17. His power and authority were coextensive with the business entrusted to his care. Franklin Fire Ins. Co. v. Bradford, 201 Pa. 32, 50 A. 286, 55 L.R.A. 408; Russell v. Farmers' Mut. Fire Ins. Co., 272 Pa. 1, 6, 115 A. 835. What is usual and necessary. 29 Am. Jur. Insur- ance, § 93, p. 116; Id., § 239, p. 234. Interim coverage between application and delivery of a policy or rejection of risk is within the ordinary course of insurance business. Harris v. Meyers, 160 Pa.Super. 607, at page 615, 52 A.2d 375.

per se breach any condition or covenant in the contract. The policy expressly provided for the contingency of an increased risk; the only deficiency, if any, was in Jones' carrying out its terms. Here is an affirmative action, an agreement by the agent on the company's behalf to include a risk in return for a valuable consideration, i.e., the additional premium.

 If the intention to contract was clear it would have been valid even if entirely oral.[18] The use of the letter does not detract from the strength of insured's position. See Myers v. Keystone Mut. Life Ins. Co., 27 Pa. 268, 270; Curran v. National Life Ins. Co., 251 Pa. 420, 96 A. 1041; Hamilton v. Lycoming Mut. Ins. Co., 5 Pa. 339, at page 344.

 The insured ought not to be prejudiced by the mistake of the insurance agent. Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, at page 410, 144 A. 294.

"If they would avail themselves of the want of complete performance of a condition existing only for their benefit, it was their duty to make complete performance possible, or at least, by no act or default of their own, interpose obstacles in the way of performance." Eureka Ins. Co. v. Robinson, Rea & Co., supra, 56 Pa. at page 267. See Hamilton v. Lycoming Mut. Ins. Co., 5 Pa. 339, at page 344.

" 'Where the terms of a policy are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted.' Humphrey's [Humphreys] v. National Benefit Ass'n, 139 Pa. (264, 20 A. 1047, 11 L.R.A. 564.)" Marcello v. Concordia Fire Ins. Co., 234 Pa. 31, at page 38, 82 A. 1090, at page 1092, 39 L.R.A.,N.S., 366; Central Market Street Co. v. North British & Mercantile Ins. Co., 245 Pa. 272, at page 276, 91 A. 662.

Plaintiff's motions for declaratory judgment and for summary judgment must therefore be denied. The Witneys insisted upon the right to a jury trial to preclude declaratory judgment for the plaintiff.[19] In the alternative they asked for a declaratory judgment in their favor but did not make a counter motion for summary judgment.[20]

 Ordinarily where the testimony is oral, the facts are for the jury. See Nanty-Glo Borough v. American Surety Co., 309 Pa. 236, 163 A. 523; Lilly v. Metropolitan Life Ins. Co., 318 Pa. 248, 177 A. 779. "When the facts are admitted, or established beyond all controversy, as they are in this case, there is no necessity for submission to a jury. It then becomes the province of the court to declare the law applicable to such facts." Wachter v. Phoenix Assur. Co., 132 Pa. 428, at page 440, 19 A. 289, at page 291; Murphy v. Beverly Hills Realty Corp., 98 Pa.Super. 183, at page 188; Gartsee v. Citizens' Ins. Co., 30 Pa.Super. 602, at page 605; 29 Am. Jur. Insurance, § 1536. This is particularly true here in view of the testimony of Jones as agent for the plaintiff. See Smith v.

---

18. Levan v. Pottstown, Phoenixville Ry. Co., 279 Pa. 381, 124 A. 89; Harris v. Meyers, 160 Pa.Super. 607, at page 612, 52 A.2d 375; Benner v. Fire Ass'n, 229 Pa. 75, 78 A. 44; Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, 410, 144 A. 294. Jones could act as agent for both insured and insurer. Rossi v. Firemen's Ins. Co., 310 Pa. 242, at page 247, 165 A. 16; Faramelli v. Potomac Ins. Co., 346 Pa. 228, at page 231, 29 A.2d 674. It will be conclusively presumed, in the absence of testimony on the subject, the parties intended to include the terms and conditions of the existing policy, plus the change. Harris v. Meyers, 160 Pa.Super. 607, at page 613, 52 A.2d 375; Rossi v. Firemen's Ins. Co., 310 Pa. 242, at pages 250, 251, 165 A. 16; Eureka Ins. Co. v. Robinson, Rea & Co., 56 Pa. 256, at page 264.

19. And see note, 62 Harvard L.Rev., No. 5, p. 787 at 834, 835; Dickinson v. General Accident Fire & Life Assur. Corp., Ltd., 9 Cir., 147 F.2d 396; Hargrove v. American Cent. Ins. Co., 10 Cir., 125 F.2d 225.

20. See Pinkus v. Reilly, D.C.N.J., 71 F. Supp. 993, at page 995; Truncale v. Blumberg, D.C.S.C., N.Y., 8 F.R.D. 492; cf. Northland Greyhound Lines, Inc., v. Amalgamated Ass'n, D.C.Minn., 66 F. Supp. 431; 3 Moore's Federal Practice, § 56.02, p. 3183.

Penn Twp. Mut. Fire Ins. Co., 323 Pa. 93, at pages 97, 98, 186 A. 130.[21]

 We are of the opinion that the record discloses there can be only one possible conclusion, i.e., that the plaintiff is liable for the Witney claim.

An order granting judgment in favor of the Witneys will be filed this date.

21. There is no need for reformation where the intention is clear. See Goldin Op. Cit. supra, p. 165, 166, and cf. Broida, to Use of Day v. Travelers' Ins. Co., 316 Pa. 444, at page 447, 175 A. 492. An agent authorized to make contracts of insurance may, at any time during the continuance of his agency, even though subsequent to a loss, correct a policy, issued by him, to conform to the agreement of the parties, 29 Am.Jur. Insurance, § 239, p. 234.